10018

STATE v. COOPER.

(96 S. E. 398.)

1. ANIMALS—MALICIOUS KILLING OF DOG—SUFFICIENCY OF EVIDENCE.—
In prosecution for malicious killing of hound dog, evidence *held*
insufficient for submission to jury of whether killing had been
malicious.

2. ATTORNEY GENERAL—RIGHTS—DIRECTION NOT TO HAND OUT BILL.—
Where a pack of hounds had been accustomed to go upon the premises
of the State tuberculosis sanatorium at night and disturb the patients
and damage property, and physician in charge, after having been
authorized by Attorney General "to use such force as is necessary to
rid the institution of this nuisance," shoots a dog that was growling
upon the premises at night, Attorney General had right to direct
solicitor not to hand out bill for malicious killing of dog.

Before SMITH, J., Richland, Summer term, 1917.
Reversed.

Ernest Cooper was convicted of the malicious killing of
a hound dog, and he appeals.

*Mr. C. N. Sapp, Assistant Attorney General,* for appel-
lant, submits: *That on appeal from the refusal of a Circuit
Judge to grant a new trial on questions of fact no relief can
be obtained in the Supreme Court:* 24 S. C. 593; 36 S. C.
514. *But where there is a total failure of evidence on the
part of the plaintiff, it is the duty of the Court to settle the
matter as an issue of law:* 77 S. C. 328; 69 S. C. 101; 64 S.
C. 566; 52 S. C. 371; 61 S. C. 490; 73 S. C. 340; 1 S. C. 1;
Crim. Code (1912), sec. 222; 2 Rich. 779; 14 Rich. 247; 62
S. C. 252; 15 S. C. 409; 29 S. C. 265; 12 Ency. of Law
(2d Ed.) 245; 21 S. C. 548; 86 S. C. 268.

*Mr. Solicitor Cobb,* for State-respondent (oral argu-
ment).

July 6, 1918.

The opinion of the Court was delivered by MR. JUSTICE
GAGE.

The defendant was convicted of the malicious killing of a hound dog.    Section 222, Code of Laws, vol. II.

The appeal presents a single necessary issue to be decided, and that is: Does the testimony so sufficiently and reasonably tend to show that the killing was malicious as to have sent that issue to the jury?    A consideration of the whole record satisfies us that there is no such testimony, and that the Court ought to have directed a verdict for the defendant.

In brief outline, these are the circumstances of the case: The defendant is a physician in charge of the State sanatorium for tubercular patients some six or seven miles out of Columbia.    The grounds are uninclosed, and some of the patients sleep in the open.    One of the prosecutors, J. H. Wilson, a farmer, resided about a quarter of a mile from the sanatorium, and Dr. S. E. Harmon, the other prosecutor, is a resident in the city of Columbia.    These two kept a pack of fox hounds at the farmer's house which were unrestrained and which prowled wheresoever their appetities carried them.

The testimony tends strongly to show that these dogs were accustomed to go upon the premise of the sanatorium in the nighttime, to disturb the patients resting there, and to do damage to the property.    About that a patient thus testified:

"He stated that considerable damage had been done since he had been there by the depredations of the dogs on the premises; that eggs and chickens had been destroyed, the garbage cans dragged about the premises, and flowers and gardens scratched up.    He stated further that he had actually seen a large dog belonging to Mr. Wilson devour a nest of eggs on which a hen was setting.    He stated that the patients had been very much annoyed in the nighttime because of dogs coming among the cots and taking the lunches which had been prepared for the patients to eat during the night, and in many instances waking up and frightening the patients; that the ladies who were inmates

17—110.

of the institution had been frightened on several occasions by being awakened by dogs which had come in among their cots or beds."

Others testified to the same effect. As a result of that situation and shortly before the transaction in issue, Dr. Hayne, the State health officer, addressed a letter to the Attorney General in which he reported the intrusion of dogs and asked what steps he might take to prevent it. The Attorney General answered very properly:

"In reply thereto I bed to advise that you are authorized to use such force as is necessary to rid the institution of this nuisance. You have the right and it is your duty to protect these wards of the State from annoyance or harm from any cause."

The defendant thus described how the dog came directly thereafter to be shot:

"And some time subsequent to that one night as I was starting to make rounds, as I was about to leave the center building shown in that picture, my attention was drawn to a dog growling near the center of the building, and I stepped back in the house and got my rifle and fired. Q. Was the dog growling at you? A. Yes, sir; I suppose so. Q. How far were you from him before you shot him? A. About as close as from me to you. Q. He growled at you? A. Yes, sir. Q. And you went back and got your rifle? A. Yes, sir. Q. What size rifle was that? A. Twenty-two. Q. And you shot in the direction of the dog? A. Yes, sir."

"Malice" has been sufficiently defined by prior decisions, and further refinement about a plain English word would not be helpful. *State v. Doig,* 2 Rich. 179; *State v. Alexander,* 14 Rich. 247.

We are satisfied that the testimony did not so reasonably tend to fix malice in the defendant's mind when the killing was done as to have warranted a submission of that issue to a jury.

The history of the case satisfies us that the Attorney General would have been well within his rights to have directed the solicitor not to hand out a bill against the defendant.

As the case stands, the anomalous spectacle is presented of one of the State's solicitors prosecuting one of the State's public servants, engaged in a difficult and important charity, and that servant is defended by the State's chief law officer.

The judgment is reversed.

MR. CHIEF JUSTICE GARY and MESSRS. JUSTICES HYDRICK and WATTS concur.

MR. JUSTICE FRASER. I fully concur in the law of this case as stated by Mr. Justice Gage.

I cannot concur in the, last paragraph. I think the solicitor should have brought the prosecution, if for no other reason than to test the question. I think the Attorney General was bound to defend the State official who acted on his official advice. If the Attorney General should advise officials and then use his authority to prevent a testing of the correctness of his advice, he would become, within certain limits, an autocrat. For these reasons I restrict my concurrence.