## 814.   MILLS & WILLIAMS *v.* IVEY.

1. Under a conveyance purporting to sell, lease, or convey to the grantee "all the pine timber for sawmill purposes" on certain described lands, only such timber as is at the time of the conveyance suitable for sawmill purposes passes; and to this extent the phrases "for sawmill purposes" and "suitable for sawmill purposes" are identical in effect. However, under such a license, the grantee does not, as when the broader language, "all the timber suitable for sawmill purposes," is used, obtain the right to use such timber as may be within the description for any . other than sawmill purposes. The cases of *Martin* v. *Peddy*, 120 *Ga.* 1079(4), (48 S. E. 420), *Allison* v. *Wall*, 121 *Ga.* 823(6), (49 S. E. 831), and *Pennington* v. *Avera*, 124 *Ga.* 147, 149 (52 S. E. 324), distinguished.

2. When such a conveyance does not name an express time within which, the privilege is to be exercised, an implication arises that it is to be exercised within a reasonable time. *McRae* v. *Stillwell*, 111 *Ga.* 65 (36 S. E. 604); *Goette* v. *Lane*, 111 *Ga.* 400 (36 S. E. 758); *Allison* v. *Wall*, 121 *Ga.* 822 (49 S. E. 831).

3. What is a reasonable time is a question of fact, under all the circumstances shown in each case. *Allison* v. *Wall*, supra. The finding of the judge, presiding without a jury, that the license in the present case had expired through the lapse of a reasonable time, is not without evidence to support it.

4. Under section 31 of the act establishing the city court of Thomasville (Acts 1905, p. 392), the defendant in a civil case waives the right to a trial by jury, unless he enters a written demand therefor "within 15. days after the first day of the term of court to which the case is returnable." *Heard* v. *Kennedy*, 116 *Ga.* 36 (42 S. E. 509). No exception to this rule is created by reason of the fact that the judge of the court is disqualified to try the case.

Action of trespass, from city court of Thomasville—J. H. Merrill, judge pro hac vice.   September 21, 1907.

Submitted January 20,—Decided February 11, 1908.

*Shipp & Kline, Roscoe Luke, W. H. Hammond,* for plaintiffs in error.   *Theodore Titus, W. C. Snodgrass, C. P. Hansell, S. A. Roddenbery,* contra.

· POWELL, J.  Ivey entered into the following contract with one
Dobson: "State of Georgia, County of Thomas.  This indenture,
made this first day of May in the year 1902, between Will Ivey, of
the first part, and J. B. Dobson, of the second part, both of said
county and State, witnesseth, that the said party of the first part,
for and in consideration of the sum hereinafter mentioned, has
granted, bargained, sold, demised, and leased to said party of the
second part, and by these presents does grant, bargain, sell, de-
mise, and lease to said party of the second part, their heirs and
assigns, all and singular all the pine timber for sawmill purposes
on the following described land [here follows a description of the
land and the payments to be made].  And it is expressly under-
stood and agreed by and between the parties hereto that the party
of the second part is to have free use and enjoyment of said timber
after above payments have been made.  The party of the first part
hereby agrees that the party of the second part shall have the full
and exclusive right to run tramroads and wagon roads on and
across said land, and the party of the first part hereby agrees,
and binds his heirs and assigns, executors and administrators, to
forever warrant and defend the privileges hereto granted to the
party of the second part."

On December 19, 1905, the grantee transferred the instrument
and his rights thereunder to the plaintiffs in error, Mills & Wil-
liams, who subsequently entered upon the land and proceeded to
box and work the pine timber for turpentine purposes.  Ivey
brought his action in the city court of Thomasville against them
to recover damages to the timber, contending, "that the instru-
ment to Dobson was not an absolute sale of the timber, but was
a mere lease or license to cut the same for sawmill purposes, in
which no time was specified as to when the timber should be re-
moved, and that therefore it had to be cut and removed within a
reasonable time; also that the instrument to Dobson being only a
lease and specifying 'all and singular the pine timber for saw-
mill purposes,' this statement restricted Dobson to the use of the
timber for the purpose stated therein; and that Dobson having
no right to turpentine the timber upon the land, his transferees,
Mills & Williams, who acquired only his rights and privileges in
the premises, had no right to turpentine the same; the contention
being that Dobson himself, under the lease, could not have tur-

pentined the timber, as this would have put a burden upon the land that was not contracted for, and not within the intention of the parties." The defendants resisted both of these contentions. The judge pro hac vice rendered judgment in favor of the plaintiff; and the defendants bring error. At the trial term the defendants demanded a jury trial, which was refused, and this is also assigned as error.

We shall elaborate only the proposition stated in the first headnote, as the others rest upon such clear authority as not to require discussion. In the fourth headnote in the case of *Martin* v. *Peddy* 120 *Ga.* 1079, the following language is used: "In a contract of sale of growing timber for sawmill purposes, the words 'one certain lot of yellow pine timber for sawmill purposes' mean timber *suitable* for sawmill purposes." In that case the purchase-price to be paid for the license was to be determined by a survey, and the question sub judice was whether under the conveyance the acreage of lands containing timber not suitable for sawmill purposes was to enter into the computation of the purchase-price; and the court held that the words "for sawmill purposes" should have the same effect, in determining this question, as if the expression "suitable for sawmill purposes" had been used. In *Allison* v. *Wall*, 121 *Ga.* 823, 828, the court held that under a conveyance using the language "all the pine trees growing and being upon certain tracts or parcels of land for sawmill and turpentine purposes," the grantee took the right to use only such trees as at the date of the conveyance were suitable for the purposes mentioned. In neither of these cases was the question presented or considered whether, under such a conveyance, the grantee took the right to use for any other purpose the trees which did pass. Now it was held in *Gray Lumber Co.* v. *Gaskin*, 122 *Ga.* 342 (5), that where a conveyance is made of "all the timber suitable for sawmill purposes," the grantee takes the right to use such timber as is included within the descriptive terms, for any purpose he may see fit, the words "suitable for sawmill purposes" being a description of the timber, and not a limitation on its use. In *Pennington* v. *Avera*, 124 *Ga.* 148, the question was whether, under the particular language of the instrument then up for construction, the grantee took the right to use the tops of trees; and in the course of the discussion, some of the language used by Justice Cobb seems to

connote the idea that the effect of the three decisions cited above
is that under the words "for sawmill purposes," the grantee might
use the timber actually conveyed for any purpose. However, the
point was not then before the court, and nothing was actually de-
cided as to the question now presented. Those who have lived
in the timbered portions of the State know that many people are
willing to sell their timber for sawmill purposes who are not will-
ing that it should be put to other uses. For example, many farm-
ers believe (whether correctly or not the writer is unable to say)
that the working of timber for turpentine injures the soil, while
the cutting of the trees for lumber does not. Also, a farmer with
a small body of timber near his home might be willing to have
it cut and carried away at once in the manner in which sawmill
people usually operate, and yet be unwilling to allow it worked for
turpentine, a use which is usually attended with the presence of
turpentine negroes at frequent intervals for a long period of time.
There is also a difference between the operations of cross-tie cut-
ters and sawmill men which might render the use of the timber
by one of them more objectionable than its use by the other. On
the other hand, one may be willing to grant a license to use his
timber for turpentine purposes who is unwilling to have it cut for
sawmill or other similar purposes. Hence, in timber conveyances,
it is not unusual for the grantor to specify the purpose for which
the timber is to be used; and the expression of such purpose ought
to limit accordingly the concurrent right of ingress and egress.
Suppose the language used in the conveyance were "all the timber
on certain lands for turpentine purposes;" it would hardly be con-
tended that the grantee could cut the trees into lumber, cross-ties,
or fire-wood. While, under such a description (to follow the ruling
in the cases of *Martin* v. *Peddy* and *Allison* v. *Wall*), the privilege
granted would extend to all such trees as were suitable for turpen-
tine purposes at the date of the conveyance, and to those only, yet
the license would not be extended beyond the uses specified, even
as to those trees. Any other construction would be a palpable vio-
lation of the manifest intention of the parties. So also, under a
grant of "all the timber on the certain lands for sawmill pur-
poses," the privilege conveyed extends to all such trees as were
suitable for those purposes at the date of the conveyance, and to
those only; but the license will not be extended beyond the uses

specified, even as to those trees; and this view is harmonious and not inconsistent with the cases cited. In the construction of contracts, the popular conception of the meaning of words and phrases is of great weight; and, as one who has lived the greater portion of his life in the pine woods, the writer is sure that the meaning here given coincides with what the people there generally understand by these expressions.                                  *Judgment affirmed.*