## ROBERTSON, STATE REVENUE AGENT, *v.* H. WESTON LUMBER CO.

[87 South. 120, No. 21362.]

1. LIMITATION OF ACTIONS. *Does not run against suit for benefit of township to recover for timber cut; "subdivision."*

A township is a subdivision of the state within the meaning of section 104 of the state constitution 1890, providing that the "statutes of limitation in civil causes shall not run against the state, or any subdivision or municipal corporation thereof," as under the law such townships were organized for the purposes of administering and using sixteenth section funds belonging to the inhabitants of such townships, and consequently statutes of limitation do not run against the township in suits instituted to recover the property or funds of the township.

2. COURTS. *Federal court cannot enjoin suit by state; injunction against suit by officers in name of state void for want of jurisdiction; "suit against the state."*

The federal courts have no power to enjoin a suit by the state in its sovereign capacity under the Eleventh Amendment to the Constitution of the United States. The state can only act through officers and agents, and where such officers and agents are authorized by a valid law to institute suits in the name of the state, and such suit is brought, the suit to enjoin such officers from proceeding with such suits is a suit against the

state which is prohibited by the Eleventh Amendment, and a writ of injunction issued in such case is void for want of jurisdiction in the federal court to entertain the suit.

3. JUDGMENT. *Not conclusive against right to sue for timber afterwards cut, though reciting that, uncut timber was rendered worthless.*

Where the state, through the revenue agent, brought suit for timber cut unlawfully, and for damages for the timber remaining on the land by reason of the method of cutting, in which judgment was recovered in a gross sum, the judgment reciting that by means of the manner of cutting the value of the uncut timber was practically destroyed, such judgment is not *res judicata* of the state's right to sue for timber cut subsequent to the judgment by the defendant. Such judgment did not operate as a conveyance of the timber not cut at the date of such judgment.

4. JUDGMENT. *Compromise judgment for cutting of timber held binding on state.*

Where the state, through its lawfully authorized officers, brings suit for a demand sounding in tort for an unascertained and unliquidated demand, and such officer in good faith agrees on the value of the subject of the action with the adversary party, and judgment is entered on such agreement, and the money paid on such judgment, the state is bound by such judgment as to the matters embraced in the suit in which the judgment is rendered. In such case section 100, Const. 1890, has no application.

5. LOGS AND LOGGING. *Deed to "merchantable timber" conveys only that merchantable at date of deed.*

Where the authorities authorized to execute a deed for the "merchantable timber" on the sixteenth sections or lands in lieu thereof, executed a deed to the "merchantable timber" on the same, and give by the lease a term of years in which to cut and remove it, the timber which passes by such conveyances is the timber that is merchantable at the time the deed is executed, and does not convey such as subsequently becomes merchantable by growth or changes in custom, etc.

6. JUDGMENT. *Not conclusive against right to sue for timber afterwards cut, though reciting that, uncut timber was rendered worthless.*

Where the state brought suit and recovered judgment for timber cut, and also for damage done to the timber growing that had not been cut, but which alleged that by reason of the method of

cutting the remaining timber which was not cut was practically worthless as a timber proposition, it is not estopped to sue for the cutting of timber cut subsequent to such judgment. Such timber may become valuable by reason of subsequent events and conditions.

APPEAL from circuit court of Hancock county.

HON. D. M. GRAHAM, Judge.

Action by Stokes V. Robertson, State Revenue Agent, against the H. Weston Lumber Company. From a judgment for defendant on demurrer, complainant appeals. Reversed and remanded.

*F. C. Hathorn* and *A. A. Hearst,* for appellant.

The first defense is the statute of limitations. We take the position that the statute of limitations has no application in this case for two reasons, and the mere statement of them is, we believe, sufficient argument. First, the state is the plaintiff, and the statute of limitations does not run against the state, Section 104, Constitution 1890; Section 3096, Mississippi Code of 1906.

The next defense presented by the plea is what we may briefly call that of *res judicata.* Briefly, it is contended by the defendant that there was a former litigation between these parties in the chancery court of Hancock county, Mississippi, in which this appellant's predecessor in office was the complainant and the appellee the defendant, by which the complainant undertook among other things, to recover from the defendant damages for cutting timber off certain lands including the lands described in this declaration, and there was a final decree by the chancery court awarding fifty thousand dollars as damages for cutting timber off the lands described in the present suit and other lands described in the former suit.

Surely the court in that case could not adjudge or determine anything about trespasses that might be committed in the future. That court was absolutely without any authority to say in that case that the timber remaining

on the lands at that time were of no value, because that
fact was not in issue and could not be, the only question
before the court was the amount of damages committed up
to that time, and in assessing that it might determine the
value of the timber already taken, but certainly it could
not go so far as to say that the timber then remaining on
the land was of no value, and if the court should under-
take to make such an adjudication, it would be nothing
more than *obiter dictum.*

And again, if the court should be said to have had juris-
diction then to adjudge that the timber then remaining on
the land was of no value, surely it could not go so far as
to say that it would never become of some value; so, we
insist, that the court could not in that case have adjudged
the issues involved in this case all of which arises out of
facts transpiring after the final disposition of that case.

The court below, in passing on plaintiff's demurrer to
defendant's special plea, seems to have overlooked that
portion of the second ground of demurrer found in the
following language shown at page 70 of the record; and
even if defendant did acquire a right to cut timber on said
lands by the alleged contracts in said exhibits, it only ac-
quired the right to cut such timber as was merchantable
pine timber at the date of said contract." The declara-
tion, pages 2 and 3 of the record, alleges that the defend-
ant, in addition to cutting the timber on said lands, killed
and destroyed other great quantities of timber and trees
and saplings and younglings on the said lands.

Now, the only authority of the boards of supervisors of
Jasper and of Bolivar counties to sell any timber on said
lands at the date of these deeds, 1899 and 1902, respec-
tively, if in fact the law they were authorized to sell any
timber on the same situated, as this land was, in Hancock
county, was granted and contained in chapter 41, Laws of
1898. This law only authorized the sale of the "merchant-
able pine timber" on sixteenth section lands, and did not
authorize the sale of any other kind of timber thereon,
and any language in the pretended deed or contract pur-

porting to embrace any timber on the lands which did not qualify, at the date of such deed or contract, within the meaning of the term "merchantable pine timbers" as used in the statute, would be null and void and any judicial interpretation of the deed or contract giving it the effect of having conveyed or authorized the right to cut any timber on the land which was not merchantable pine timber at the date of the deed as said term was used in the statute and interpreted in the light of its generally accepted meaning at the time of the enactment of said statute, then such judicial interpretation would be erroneous.

There can be no doubt but that, if under the deeds the defendant could cut any timber on the lands, he would have been confined in such cutting to that which qualified within the meaning of the term merchantable pine timber at the date of the deeds or contracts under which he claimed the right to cut, and the cutting of any trees thereon which were not at the date of such deeds or contracts merchantable pine timber was wrongful and he was liable in damages for cutting the same.

The general rule, we might say supported by unanimous' authority, in the construction of timber deeds is that the provision in a timber deed as to the size or suitability of the trees refers to the time of the conveyance, rather than some time in the future, in the absence of anything to show a contrary intent.

In support of this general rule, we cite the following cases: '(Ala.) *Zimmerman* v. *Wilson,* 77 So. 364; (Ark.) *Griffin et al.* v. *Anderson Tully,* 121 S. W. 297; (S. C.) *Crawford* v. *Atlantic Coast L. Co.,* 60 S. E. 445; (Ky.) *Evans* v. *Dobbs et al.,* 112 S. W. 667; (Pa.) *Shiffer* v. *Broadhead,* 17 Atl. 592; (Ga.) *Mills & Williams* v. *Ivey,* 60 S. E. ——; *Shippin Bros. L. Co.* v. *Gates,* 70 S. E. 672; *Vandiver* v. *Byrd-Mathews L. Co.,* 90 S. E. 690; *Allison* v. *Ware,* 49 S. E. 831; *Roberts* v. *Gress,* 67 S. E. 802; *Goette* v. *Lane,* 36 S. E. 758; *Carter* v. *Williamson,* 31 S. E. 651; *McRea* v. *Stillwell* (and notes) 55 L. R. A. (old) 513; (N. C.) *Whitted* v. *Smith,* 47 N. C. (2 Jones) 36;

*Robinson* v. *Gee,* 26 N. C. 4 (Ired. L.) 186; *Whitfield et al.* v. *Rowlands,* 67 S. E. 512; *Warren* v. *Short,* 25 S. E. 704; (S. C.) *Wilson L. Co.* v. *Anderson & Son,* 61 S. E. 217; (Ky.) *Hicks et al.* v. *Phillips et al.,* 147 S. W. 42; (Pa.) *Anderson* v. *Wade,* 6 Atl. 48; *Irwin* v. *Patchin,* 30 Atl. 436. We know of no case holding to a contrary view; though *Nelson* v. *Americus Manufacturing Co.,* 186 Fed. 486, is sometimes misconstrued.

We do not think it is necessary for the court to pass on this merchantable pine timber question in order to reverse this case; however, since the court expressly pretermitted the question, necessarily involved in the merchantable pine timber question here presented, of tree growth in the recent case of *Vinegarbend Lumber Co.* v. *Churchwell,* we thought it well to brief this point at some length so that, in event the court should desire in this case to decide the point, we may give the court the advantage of a somewhat exhaustive research which we have made of the subject. Since our research had brought to our attention but one case apparently holding to the contrary of the general rule stated, ie., the case of *Nelson* v. *Americus Mfg. Co., supra,* we have taken the liberty of attempting to distinguish that case from those holding to the general rule and, of course to distinguish it from the present case upon that point.

For the many errors pointed out above, which are manifest to us, we earnestly insist that the lower court erred in overruling the demurrer of plaintiff to the special plea of the defendant, and we think the case ought to be reversed.

*Gex & Waller,* for appellee.

The first special plea to which demurrer was filed is the plea of the statute of limitations. From this plea it will appear that the timber was cut no later than the latter part of the year 1908, and, therefore, practically twelve years had elapsed between the filing of the suit and the date of the cutting or the accrual of the right of action, and if the statute of limitations ran in this matter, certainly the suit was filed at least six years too late. Now

the question is whether the statute of limitation runs in such a case.

In the first place, it must be remembered that this suit is for and in behalf of the inhabitants of the townships to whom were originally allotted the pine lands as set out in the declaration so that the suit, strictly speaking is not one out of which the whole people of the state of Mississippi will get any money; nor is it money belonging to the state in its sovereign capacity. The state is a party through its revenue agent only for the use and benefit of the inhabitants of the township. In this connection, though, we want the court to understand that we are familiar with the section of the constitution and the Code providing that the statute of limitation shall not run against a state, a municipality or any subdivision of government.

But these provisions are only declaratory of the common law. No such statutes ever run against the state in its sovereign capacity, and it does not take any express legislative act or constitutional provision to keep the statute from running against the sovereign or any subdivision thereof, when acting in its sovereign capacity, and, therefore, the section of the code and the constitution providing that the statute of limitation shall not run against the state or any of the subdivisions of government is only declaratory of the common law, and therefore, we say, that unless this suit is a suit for and in behalf of the state acting in its sovereign capacity, that the statute of limitation will run against the beneficial interests for whom the suit is filed. The county as a subdivision of government or the state as a sovereign, obtains no benefits from these funds, if any should be recovered, in this cause. All of it belongs to the inhabitants of the townships, shall be accounted for to them, and is for their use. The county is only given the control through the board of supervisors of the funds arising from the sale of the timber on these lands. (See section 7511, Hemingway's Code; section 4701, Code of 1906.) The board of supervisors cannot

even spend this money for the use of the schools without the recommendation of the trustees of the townships. (See section 7516, Hemingway's Code; section 4705, Code of 1906.)   And by section 7552, Hemingway's Code; section 4711, Code of 1906, it is specially provided that the county cannot even lease the school lands without first having obtained the consent of the inhabitants of the township, through their trustees.

From that it will be seen that the entire scheme of legislation in Mississippi is to the effect that the county only acts as trustees for the inhabitants of the townships in managing these affairs.   It is not acting in a governmental capacity.   It is acting purely and simply as a trustee for the use and benefit of the inhabitants of the townships.   See *Warren Co.* v. *Gans,* 80 Miss. 76; *Lumber Co.* v. *Harrison Co.,* 89 Miss. 448; *Jeff Davis Co.* v. *Simrall Lumber Co.,* 94 Miss. 530.

In such cases it is not a new theory in Misssissippi or anywhere else that the statute of limitation will run against the beneficial interest.   Statutes of limitation must be construed more strictly against the sovereign, and unless by the provision of the statute one for whom its acts as trustee is embraced therein, certainly by implication it cannot be embraced.   See *Warren Co.* v. *Lamkin,* 93 Miss. 123.

This very question here under discussion has been passed on not only by the courts of nearly every state in the union but also by the supreme court of the state of Mississippi. In the case of the *County Treasurer of Carroll County* v. *Miller,* 13 S. & M. 531, this court held that the statute of limitation will run against the state when it acts as trustee and, if you please, when acting as trustee for the sixteenth section funds.   *Shepherd Brown & Wife* v. *Board of Supervisors of Issaquena County,* 54 Miss. 230; *Money* v. *Miller,* 13 S. & M. 531; *Madison County* v. *Powell,* 71 Miss. 619; *Miller* v. *State,* 38 Ala. 600; *Moulton* v. *Henderson,* 62 Ala. 436; *Trustees of Schools of Pike County* v. *Otwell,* 159 Ill. App. 913; *Board of County Commis-*

*sioners* v. *Willett,* 152 Pac. 365; *Paquette* v. *Marshall Co., et al.; State* v. *Henderson,* 40 Iowa, 424. To the same effect see, also, *Clark* v. *School District,* 106 S. W. 677; *State ex rel., Board of Com. Fontaine. Co.* v. *Stewart,* 91 N. E. 613; *Trustees of the Proprietors of Kingston* v. *Lehigh Valley,* 88 Atl. 763.

Res Adjudicata. The next plea presented to the declaration which was demurred to, was the plea of *res adjudicata,* which is set out on page seven of the record, and to which all the exhibits are filed. That plea sets up that the revenue agent of the state of Mississippi, in 1907 filed a bill against this same defendant involving and embracing the same subject-matter, and seeking to recover for damages caused the various townships by this same defendant in cutting and removing the timber from all these pine lands, embracing of course, the timber on the lands involved in this suit, and which said suit was filed for the use and benefit of the townships as set out in the declaration herein, as well as for the use of other townships. The attack on the deeds was identically the same, as raised now by the appellant's declaration.

We say that suit is *res adjudicata* of any issue raised in this case. Certainly the matters involved in this suit are identical with those raised in the original suit, especially by the amended bill. Each suit sought to recover from the H. Weston Lumber Company damages for the wrongful cutting of the timber on the same land on the same contention, because of the invalidity of the same lease, and the decree included and embraced all damages now claimed or contended for by the appellant.

It is hardly necessary to cite authorities to this court under these facts, as to this suit being barred on the plea of *res adjudicata.* However, through abundant caution, we refer the court to the following well-considered authorities all of which are to the point: *Harrison* v. *Turner,* 116 Miss. 550; *Hardy* v. *O'Pry,* 102 Miss. 197; *Finch v. Dobbs,* 112 Miss. 73; *Hubbard* v. *Flynt,* 58 Miss. 266;

*Weatherby* v. *Pearl River Lumber Co.,* 88 Miss. 535; *Shaw* v. *Oil Company,* 92 Miss. 340.

But our friends say that this was a compromise suit and therefore was not binding on the state. In answer to that contention we cite the following authorities: *State* v. *Fragiagomo,* 71 Miss. 424; *Eastmand-Gardiner* v. *State,* 101 Miss. 460.

But our friends say that the plea of *res adjudicata* cannot be maintained because in the original suit the revenue agent undertook to recover for damages caused to the land for cutting the merchantable pine timber thereon and in this case he is not only seeking to recover for cutting the merchantable pine timber but in addition for cutting what he calls saplings, or younglings. Of course, we are not familiar with the term younglings. We assume that appellant has reference though to the young timber on the land. We submit that there was no such thing as saplings, or younglings cut off the land, but if there had been, the record fails to show it. The plea that was demurred to sets out that the appellee cut only such timber off the land as it had a right to cut under its lease. No more, no less. *City of Natches* v. *Mallery,* 54 Miss. 499; *City of Jackson* v. *National Bank & Trust Co.,* 112 Miss. 537. Estoppel has been held to operate even against the United States Government. *Walker* v. *United States Government,* Reported in 139 Fed. 409, which case was afterward affirmed by the circuit court of appeals in 148 Fed. 1022; *Newbattle,* 10 Ct. App. Prob. Div. L. R. 33; *The Siren,* 7 Wall. 159, 19 L. Ed. 129; *United States* v. *Chandler,* 81 C. C. A. 221, 152 Fed. 25; *State ex rel., Smyth, Atty-Gen.* v. *Kennedy,* 83 N. W. 87; *Colo. Springs* v. *Colo. City,* 94 Pac. 316; *City of Portland* v. *Inman Poulsen Lumber Co.,* 133 Pac. 829; *Trustees of the Village of Bath* v. *McBride,* 148 N. Y. S. 836; *Trustees of the Village of Bath* v. *McBride,* 148 N. Y. S. 840; *Trottle* v. *Wood,* 152 Pac. 600; *Washington Water Power Co.* v. *City of Spokane,* 154 Pac. 329; *City of Atlanta* v. *Gleen,* 87 S. E. 910; *Franklin County* v. *Corstenes,* 122 Pac. 999; *Farmers Bank of Ken-*

*tucky* v. *Stone,* 174 U. S. 409 ; *Fritch* v. *United States,* 236 Fed. 133 ; *Sanitary District* v. *Railway Co.,* 89 N. E. 800 ; *State* v. *Twin Falls, etc., Co.,* 166 Pac. 220 ; *Boyle City* v. *Wilkinson,* 102 Pac. 148 ; *People* v. *Commissioners of Highways of the Town Embarrass,* 188 Ill. 56 ; *Jasper Co.* v. *Bellew,* 103 U. S. 745, 26 L. Ed. 422 ; *Commissioners of Leavenworth County* v. *Bernes,* 94 U. S. 70, 24 L. Ed. 63 ; *Pendleton County* v. *Amy,* 13 Wall. 297, 20 L. Ed. 579 ; *Anderson County* v. *Beal,* 113 U. S. 227, 28 L. Ed. 966 ; *State of Iowa* v. *John A. Creighton,* 191 Fed. 270.

In *Handly, Trustee,* v. *Noonan,* 51 Miss. 166, the court held that under a void partition sale, the heirs who had accepted the money, the proceeds of the sale, were estopped from questioning the validity thereof, even though the sale was made when the minors were under their disability, and did not know the invalidity of the sale at the time they accepted the money. See, also, to the same effect : *Young* v. *Walker,* 70 Miss. 814 ; *Keel* v. *Jones,* 93 Miss. 245 ; *Francis Winslow* v. *B. & O. R. R.,* 208 U. S. 59, 52 L. Ed. 388 ; *Stone* v. *U. S.,* 22 L. Ed. 144, 19 Wall. 13 ; *State for the Use of Goodwin* v. *Regent Laundry Company,* 190 S. W. 951 ; *Cape* v. *Bloun,* 91 S. W. 615 ; *Hardings Admx.* v. *Weisinger,* 109 S. W. 890 ; *Stillman* v. *Gorman,* 61 Atl. 601 ; *Hector* v. *Warren,* 124 S. W. 1119 ; *James* v. *City of Seattle,* 106 Pa. 1114 ; *W. B. Conkey* v. *Goldman,* 125 Ill. App. 161 ; *Guthrie* v. *O. T. Lyone & Sons,* 98 S. W. 432 ; *Lodwick Lumber Co.* v. *Taylor,* 99 S. W. 192 ; *Lyone* v. *City of St. Louis,* 178 S. W. 96 ; *Jones* v. *Smith,* 196, S. W. 1088 ; *Benjamin Moore & Co.* v. *Clark,* 204 Ill. App. 191 ; *Brooklyn City & N. R. Co.* v. *National Bank of the Republic,* 102 U. S. 14 ; *Daniels* v. *Tearncy,* 102 U. S. 415 ; *Everett* v. *Saltus,* 15 Wend. 474 ; *Holbrook* v. *Wright,* 24 Wend. 119 ; 35 Am. Dec. 607 ; *Winter* v. *Coit,* 7 N. Y. 288, 57 Am. Dec. 522 ; *Mills* v. *Hoffman,* 92 N. Y. 181 ; *Wood* v. *Seely,* 32 N. Y. 105 ; *Ellis* v. *White,* 61 Iowa 644 ; *Test* v. *Larch,* 72 Ind. 452 ; *Abbott* v. *Wilbur,* 22 La. Ann. 368 ; *Clear Springs Water Co.* v. *Catasougua Borrough,* 90 Atl. 566 ; *Cape Girardeau & Tbt. R. R. Co.* v. *Southern Illinois*

*& Missouri Bridge Co.,* 114 S. W. 1084; *Olloman* v. *Southern Ry. Co.,* 90 S. E. 292; *Roger* v. *J. B. Leaveritt Co.,* 337 Fed. 737; *People* v. *LaSalle Street Trust & Savings Bank,* 135 Ill. App. 336; *Plaurd* v. *Gerrity,* 146 Ill. 224; *State ex rel. Ponath* v. *Munch,* 130 S. W. 282; *Norfolk & O. V. Ry. Co.* v. *Consolidated Turnpike Company,* 68 S. E. 346; *Ettor* v. *City of Tacoma,* 107 Pac. 1061; *In Re Decker's Estate,* 3 Alaska 106; *Davenaugh* v. *Shakeletts Adm.,* 60 S. E. 335; *Hunte* v. *Wright,* 139 S. W. 1007; *Snouffer Ford* v. *City of Tepton,* 129 N. W. 345; *Brown* v. *Franch,* 49 So. 255; *Hanley* v. *Mason* (Rehearing denied, 85 N. E. 732), 85 N. E. 381; *Centaru Co.* v. *Robinson,* 91 Fed. 889; *Weiler* v. *Armstrong,* 51 So. 268; *Norfolk & Western R. R. Co.* v. *Mundy,* 65 S. E. 61; *Cople* v. *Lindbloom,* 608 Pac. 634; *Hiller* v. *Ladd,* 43 L. Ed. 1184, 85 Fed. 703; *Northern Chicago Street Ry. Co.* v. *Chicago Union Traction Company,* 150 Fed. 612; *Townsend* v. *Scurlock,* 99 S. W. 123; *David* v. *Tucker,* 78 S. E. 909; *Browning* v. *Boswell,* 215 Fed. 125; *Kinnure* v. *Brainerd & Armstrong Co.,* 91 Atl. 185; *Crumley* v. *Laurens Banking Company,* 81 S. E. 871; *Reeve* v. *Pruit,* 142 Pac. 1019; *Bedie* v. *Bates,* 156 N. E. 8; *Officer* v. *J. L. Owen,* 252 Fed. 337; *People* v. *Racquette Falls Water Company,* 166 N. Y. S. 474.

We submit therefore that if the principle of estoppel can ever avail in any case, this is one wherein that principle must prevail. Our friends though, in the concluding part of their brief try to interject the proposition that they should be permitted to maintain the present suit, because when the original suit was settled or a decree was entered thereunder against the appellee herein, that the timber on the lands set out in the declaration herein had not been cut or, that is to say, the timber on these lands had been cut since the year 1908 and therefore could not be embraced in the damages awarded in the decree referred to. We say then that they are estopped from contending that the damage was not complete prior to the year 1908.

We respectfully submit that if there ever is to be an end of litigation, this is one of the cases wherein the court should say that a stop should be put to the multitudinous litigations on the same issue, after being once determined.

On the facts, the morals of the case, and the authorities herein cited, we respectfully submit that the case should be affirmed.

ETHRIDGE, J., delivered the opinion of the court.

The state revenue agent brings this action against the defendant on behalf of the inhabitants of certain townships for the cutting of timber on lands given in lieu of sixteenth section lands. The lands in question are situated in Hancock county, and the suit is for timber cut after the 28th day of June, 1908; it being alleged that on that day and thereafter there were standing, being, and growing on the said lands large quantities of timber, trees, saplings, and younglings of great value. The suit was brought in the name of the state of Mississippi as trustee for certain townships, it being alleged that the property described was the property of the state of Mississippi as a trustee, and that the H. Weston Lumber Company by and through its agents and employees, without the consent or authority of the state of Mississippi, entered upon said lands, and did willfully, unlawfully, recklessly, and intentionally cut down and carry away and convert to its own use and benefit great quantities of said timber, and did kill and destroy great quantities of said trees, saplings, and younglings on said land, etc., and demands a judgment in the sum of twenty thousand dollars for such trespass. There is also a count for the statutory penalty for the timber cut, but this count is abandoned.

The defendant filed a plea in answer to said declaration in numerous paragraphs, in which it was alleged that the injuries and wrongs sued for were committed in the years 1907 and 1908, and are barred by the statutes of limitation. Second, that the board of supervisors of the counties wherein the townships are situated, advertised

the merchantable timber on such lands for sale, having authority so to do, and that the H. Weston Lumber Company was the biggest and best bidder for said timber and had paid therefor; and that the plaintiff, the revenue agent, had no right to such timber at the time the same was cut and removed, which, it is alleged, was removed within the limits fixed by the deeds conveying the timber under its purchase from the said boards of supervisors. That the defendant, the H. Weston Lumber Company, cut the timber on said lands under and by virtue of said deeds as required by law on or before the 25th day of June, 1908, and that on the 27th day of November, 1907, the revenue agent of the state of Mississippi filed a suit in the chancery court of Hancock county where the lands were situated on behalf of the state of Mississippi and all counties in the state interested in the said land, and that some time after the filing of the said bill Mrs. Lois Angela Patton was the owner of the timber on the land set out in the declaration and exhibited her bill of complaint on the chancery side of the United States District Court for the Southern Division of the Southern District of Mississippi, and that on the 25th day of June, 1908, the revenue agent filed an amended bill on behalf of the plaintiff against the defendant, and in said bill sought to set aside the conveyance of the timber on the land described in the declaration, and in his amended bill alleged that the defendant, the H. Weston Lumber Company, had cut all of the timber off of said lands and had-either completely denuded the land of all timber or, if any had been left on the land, it had been ruined for commercial purposes, and, under the theory that it had been cut or destroyed, sought to recover of the said H. Weston Lumber Company for the said counties as well as the inhabitants of the said townships the full value of the timber belonging to the said townships as set out in the bill. That Mrs. Patton had asked for an injunction against the state revenue agent, the land commissioner, and their attorneys, enjoining them from further proceeding against her and the

H. Weston Lumber Company on the theory that she was
the owner of the timber on said lands, and that the said
suit would becloud her rights and destroy her contract
with the Weston Lumber Company for cutting said tim-
ber. That by the amended bill in that suit the revenue
agent by an agreement with Mrs. Patton amended his bill
and sought to recover of and from the H. Weston Lumber
Company and each of its stockholders and directors and
Mrs. Patton the value of the timber, and alleged that the
Weston Lumber Company had either cut all of the timber
or had ruined the same from a timber standpoint. The
pleadings in that suit are attached to the pleas to this
suit.

It is alleged that the papers originally filed in the fed-
eral court in a former suit have been lost, but that under
the said bill in the former suit and the amended bill
therein such proceedings were had that on the 25th day
of June, 1908, said cause was submitted to the chancellor,
said Mrs. Patton agreeing in consideration of the sub-
mission of the said cause at that time and the amended
bill making her a party thereto to waive that part of her
injunction and let the cause proceed in the state court,
and that said cause proceeding to hearing, and decree
was entered adjudging that the H. Weston Lumber Com-
pany had destroyed the full value of all timber on the
lands as described in the said bill of complaint, which
bill contained the lands involved in this suit, and that
judgment was rendered against the Weston Lumber Com-
pany for fifty thousand dollars for the timber cut and
for the damage done to the remaining timber, a copy of
the said decree being marked an exhibit to the pleas of
the defendant in this cause, which decree shows that the
court adjudged that the fifty thousand dollars was the
reasonable value for the timber cut and the damage done
to the remainder of the timber standing, which the de-
cree adjudged to be practically destroyed as a timber
proposition, and that a judgment was entered in the fed-
eral court against the revenue agent and the land com-

missioner, enjoining them from interfering with the cutting of the timber growing on such lands, which decree of the federal court is also made an exhibit to the pleas.

It is further alleged that the Weston Lumber Company has paid the full amount of the judgment or decree and complied with said decree in every respect, and that the money has been distributed to the several counties for the use of the townships for which the said lands had been donated in lieu of sixteenth sections; and that by reason of the acceptance of said money and the entry of such judgments the revenue agent is now estopped to bring this suit. The alleged lease and contracts with the boards of supervisors are made exhibits to the pleadings for the defendant and the moneys paid are shown by exhibits so as to show what each county received for each township for sixteenth sections.

The decree of the federal court above referred to set out as exhibit to the bill recites that the cause being set down for final hearing upon a written agreement entered between the parties by which said cause was adjusted, and one of the provisions of the said agreement being that a decree should be entered in accordance with the prayer of the complainant's bill, it is thereupon ordered:

"That said defendants, Wirt Adams and E. H. Nall, land commissioner of the state of Mississippi, their respective agents, attorneys and representatives; and successors in office, be and they are hereby enjoined and restrained from suing or otherwise interfering with the complainant, her agents, assigns or vendees, in case she conveys the same in the cutting and removing of the timber standing, growing or being upon the land situated in Hancock county and described in the bill of complaint, setting forth the description, and that said defendants, their agents, servants, deputies and successors in office are hereby enjoined and restrained from interfering with the said complainant, her agents, servants or vendees, by suit or otherwise, in selling and marketing said timber on said lands, or the lumber sawn therefrom, said injunction to

operate during the life of the several leases or contracts under which said complainant acquired said timber or timber rights upon said lands as set forth in said bill of complaint, and as shown by the records of deeds of Hancock county, Miss., referred to in the bill."

The pleas of *res judicata* set forth above and of the statute of limitations and estoppel, with the decree of the federal court and of the former chancery suit attached as exhibits, were demurred to by the complainant, the demurrer overruled, and the complainant declined to plead further, and judgment final was rendered, from which the revenue agent prosecutes this appeal.

The first question for consideration is the plea of the statute of limitations. It is insisted by the appellant that the statute does not run against the state of Mississippi in the present case for two reasons:

First, because the statute does not run against the state and its subdivisions under section 104 of the State Constitution, which reads as follows:

"Statutes of limitation in civil causes shall not run against the state, or any subdivision or municipal corporation thereof."

And, second, because if this be not true, that the revenue agent was restrained by the injunction in the federal court from bringing any suit until after the defendant had finished cutting the timber, and that the suit was brought within the period of the statute, even if it applies after such timber had been cut.

The appellee relies upon the statute of limitations under the theory that the state of Mississippi, in the suit, is a mere trustee, and that, as the statute would run against its beneficiary, it would run also against the state; and relies upon certain decisions rendered prior to the adoption of the Constitution of 1890, being *Money, County Treasurer,* v. *Miller,* 13 Smedes & M. (Miss.) 531, in which the holding of the court was in accordance with the contention of the appellee; and, also, *Brown* v. *Board of Supervisors,* 54 Miss. 230, which was also a suit affecting sixteenth section land.

We think that a township is a subdivision of the state within the meaning of section 104 of the State Constitution. It will be noted on referring to the chapter on sixteenth section lands that such funds derived from leases or other funds belonging to the sixteenth sections may be devoted to the building and repairing of schoolhouses or the purchase of furniture for same or necessary school supplies other than books, for a supply of water and fuel, and for the payment of teachers, both by supplementing the salaries of teachers during a public term, and for the payment of teachers' salaries after the common school term shall expire. That the fund is controlled by the trustees selected for the township who shall determine to which of the uses above named such funds may be devoted. It is also provided in this chapter that in order to lease sixteenth section land not situated in a city, it is necessary to secure the consent of the inhabitants of the township. The consent of the inhabitants of the township is to be obtained by the township trustees by giving notice in three or more public places in the township for at least five days, calling a meeting of the heads of families in the township to be held at a conveniently located schoolhouse therein on a day to be named in the notice. That on the day named the trustees shall attend, organize the meeting, and take the sense thereof, and unless the inhabitants so consent to the lease, the lease shall not be made for a longer time than one year.

It is well established that the giving of educational instruction is one of the functions of the state and the lands of the state are laid off in townships for the purposes of administering the sixteenth section funds for school purposes.

The former suit, which was sought to be enjoined in the federal court, was a suit by the state in its sovereign capacity, and the federal court had no jurisdiction to enjoin the state from suing in its courts in reference to a matter which was clearly authorized by law. It is true that the federal courts may enjoin a state officer from doing an

unlawful act under color of office, or from proceeding under an unconstitutional statute, but the Eleventh Amendment to the Constitution of the United States was written in vain if a sovereign state can be prohibited from suing for its rights by the federal courts by the expedient of enjoining the officers who are authorized by law to act for the state; the state being an impalpable person can only act through its officers, and where a state has a right to bring a suit under a valid law, it cannot be enjoined from doing so. So we think the second proposition of the appellant is not well taken as to the first plea.

The next subject involved in the suit is the question as to whether the revenue agent is precluded from bringing this suit on the ground that the first suit was *res judicata,* and that the decree of that court awarding damages for the timber cut, and damage to the timber not cut by reason of the method of cutting so as practically to destroy its value as timber which constituted one of the elements of the fifty thousand dollars for which judgment was rendered, and which was paid and distributed, was an adjudication of its present right to sue for timber not there cut, but at that time practically valueless. The plea of the appellee assumes for its basis in this regard that having been compelled to pay the full value of the timber, it had a right thereafter to cut and remove the timber because it had paid for it.

We think this contention is fundamentally unsound. The judgment did preclude the revenue agent from suing for any timber whether merchantable or not which had been cut prior to that judgment, and although the judgment rendered did adjudge that the remaining timber was practically valueless, the judgment did not have the effect to transfer the timber to the defendants in that suit. The timber, although at that time practically worthless on the market by reason of the method of cutting it, was still the property of the township or the state in trust for the township. Neither the revenue agent, the land commissioner. nor the court was invested with any statutory

or other power to convey the timber to the defendant. However worthless it may have been, it belonged to the state as trustee, for the inhabitants of the several townships. Even though it was valueless at that time, subsequent events may have rendered it valuable at the time it was cut and removed. If, for instance, a railroad should be built through or near to such tract of land, that might of itself render valueless timber very valuable because of making it available to transportation. Again, the advent of the motor truck as a method of conveyance has brought increased value to timber because of the cheapness thus afforded in bringing it to market. Again, the demand and customs of the country may so change as to make marketable at one time what was not marketable at another.

The declaration in this case does not seek to go behind the judgment then rendered. Such judgment foreclosed the controversies then existing between the revenue agent and the defendants. It adjudged the revenue agent's right to recover. It adjudged the amount, in value, of the timber cut and the damage done to the remaining timber, but it did not adjudge, and could not adjudge, that the remaining timber left upon the land could thereafter be cut and removed by the defendant.

The appellant contends that the judgment in the former case was a compromise judgment and that it was not binding on the state for the reason that the revenue agent had no power to compromise the state's right or the right of the inhabitants of the township for which the state was suing because section 100 of the Constitution requires that—

"No obligation or liability of any person, association, or corporation held or owned by this state, or levee board, or any county, city, or town thereof, shall ever be remitted, released or postponed, or in any way diminished by the legislature, nor shall such liability or obligation be extinguished except by payment thereof into the proper treasury; nor shall such liability or obligation be exchanged or transferred except upon payment of its face

value; but this shall not be construed to prevent the legislature from providing by general law for the compromise of doubtful claims."

This section does not apply to the case before us. The section does not prevent an agreement by judgment for the ascertainment of an amount which is uncertain in its nature. Under this section of the Constitution where a liability or obligation is fixed and certain it can only be compromised in the manner provided for the compromise of doubtful claims under the Code chapter on that subject. But where the amount due the state is in its very nature uncertain, it is competent for the state or the officer having power to represent it, acting in good faith, to consent to a judgment liquidating the amount due. The section was not intended to prevent the entry of a judgment for a less amount than the amount sued for where the claim was unliquidated and not capable of ascertainment by calculation, or some equally certain manner.

The appellant further contends that the declaration in the present case is not only for timber then standing on the land of the character denominated as merchantable timber at that date, but embraces timber which has become merchantable since that date by growth or by the change in commercial standards making merchantable now that which formerly was not merchantable. Trees that have grown to such size as to constitute merchantable timber since the date of the sale or attempted sale by the counties to the defendant did not pass by the conveyance even if it was valid, but remained the property of the state in trust for the inhabitants of the township. However, as stated above, a judgment in a former case foreclosed all controversy of this character antedating that judgment. The great weight of authority supports the doctrine that a provision in a timber deed as to the size, suitability, or merchantability refers to the time of the conveyance and not to the time of the cutting and removal of the timber. A deed to timber becomes effective on its being signed and delivered, and delivered, and in the absence of provisions to the con-

trary will not include such timber as grows subsequently so as to come within the meaning of the term as of the time of the cutting rather than the date of the conveyance. *Zimmerman* v. *Wilson*, (Ala.), 77 So. 364; *Griffin* v. *Anderson-Tully,* 91 Ark. 292, 121 S. W. 297, 134 Am. St. Rep. 73; *Crawford* v. *A. C. L. Co.,* 79 S. C. 166, 60 S. E. 445; *Evans* v. *Dobbs* (Ky.), 112 S. W. 667; *Shiffer* v. *Broadhead,* 126 Pa. 260, 17 Atl. 592; *Mills & Williams* v. *Ivey,* 3 Ga. App. 557, 60 S. E. 299; *Shippen Bros. Lumber Co.* v. *Gates,* 136 Ga. 37, 70 S. E. 672; *Vandiver* v. *Bird-Matthews Co.,* 146 Ga. 113, 90 S. E. 960; *McRae* v. *Stillwell,* 111 Ga. 65, 36 S. E. 604, 55 L. R. A. 513 and note; *Whitted* v. *Smith,* 47 N. C. 36; *Whitfield* v. *Rowland,* 152 N. C. 211, 67 S. E. 512; *Wilson Lumber Co.* v. *Alderman,* 80 S. C. 106, 61 S. E. 217, 128 Am. St. Rep. 865; *Hicks* v. *Phillips,* 148 Ky. 670, 147 S. W. 42; *Irwin* v. *Patchen,* 164 Pa. 51, 30 Atl. 436. There are some cases to the contrary, but we think the above announce the sound rule and accord with the weight of authority.

It is insisted by the appellee that the state is estopped in the present case to bring the present suit because it accepted the fruits of the judgment in the former suit, and distributed the proceeds among the several townships entitled thereto, and that they have received the full value for the timber and consequently are estopped to claim that the timber had a value at the time it was cut and converted to the use of the defendant for which the present suit is brought. As indicated in the opinion above, the judgment only has force as an estoppel as of the date it was entered and as to controversies then in litigation. The judgment was compensation for the timber then cut and for damage then done to the timber not cut. But it in no way is inconsistent with the assertion of the revenue agent in the present suit. As above stated, the timber standing on the land was not conveyed to the defendant. Under color of an injunction the defendant entered upon the land and cut the remaining timber, but the judgment upon its face does not undertake to give the defend-

ant any right to the timber which was subsequently cut and the receipt of money from a judgment can not operate as an estoppel against the state in the present suit. Of course, the doctrine of estoppel can be applied to the state or its subdivisions when the judgment is about a controversy to which the state is a party and deals with the subject-matter which the court is competent to adjudicate in a controversy. The doctrine of estoppel is not asserted against the state in all cases where an individual might be estopped because an individual is competent to make agreements and such agreements may be valid when made by an individual where the state or its officers might not have power to make it, and if they had no power under the law to make the agreement, the state would not be bound by the unauthorized act of the agent in exceeding his authority. We do not think the pleadings in the present case warrant the application of the doctrine of estoppel against the state in this case.

We think the court below erred in not sustaining the demurrer to the pleas referred to, and the judgment will be reversed, the demurrer sustained, and the cause remanded with leave to the appellee to plead over.

*Reversed and remanded.*