GERARD *v.* GILL *et ux.*

(In Banc. Nov. 8, 1943. Suggestion of Error Overruled Dec. 20, 1943.)

[15 So. (2d) 478. No. 35429.]

(In Banc.   Dec. 20, 1943.)

[15 So. (2d) 916.   No. 35429.]

Hugh V. Wall, of Brookhaven, and C. F. Coward, of Meadville for appellant.

Hutchison & Hutchison, of Summit, for appellees.

Hugh V. Wall, of Brookhaven, and C. F. Coward, of Meadville, for appellant, on suggestion of error.

Hutchison & Hutchison, of Summitt, and Forrest B. Jackson, of Jackson, for appellees, on suggestion of error.

Argued orally by **Hugh V. Wall**, for appellant, and by **J. T. Hutchison**, for appellees.

**Roberds, J.**, delivered the opinion of the court.

Appellant in this bill prayed for an injunction against appellees, Luther Gill and his wife, Mrs. Ida Gill, restraining the appellees from interfering with the appellant in her effort to cut and remove the hardwood timber from one hundred and fifty-two acres of land belonging to Luther Gill and located in Lincoln County,

Mississippi. The right to cut the timber is grounded upon a deed claimed by appellant to have been executed to her by appellees. The chancellor dismissed the bill.

The only question presented on this appeal is one of fact, and that is whether appellees executed the instrument presented here as a deed. They say they did not execute it. Appellant says they did. The chancellor held they did not. This makes it necessary for us to summarize the evidence.

On behalf of appellees, Mr. and Mrs. Gill testified that they executed to appellant, or to her husband, an option to purchase the timber; that thereafter Mr. J. A. Gerard, husband of appellant, appeared at their home on the day of the date of the supposed deed and that an oral agreement was then made under which appellees were selling to appellant the timber on said land for $800, being an estimated price of $5.50 per thousand feet on the stump, and that it was agreed that appellant would have ninety days within which to cut and remove the timber; that Mr. Gerard then and there paid them the $800 and they executed a writing which they thought was a receipt for the money. In effect, they said it was a receipt and not a deed. They appeared to base these statements, however, not upon a denial that the names to the deed are their signatures, but upon their recollection that the paper they signed was of a different color from the deed exhibited to them on the trial, and that the receipt had no printing upon it, whereas the deed is partly type-written. When Mr. Gill was presented the deed and asked to examine it and so say whether the signature thereon was his, he said: ''It looks like the receipt that I signed.'' In another place, he was asked with reference to the deed: ''Is that your handwriting, Mr. Gill? Did you write that?'' And he answered: ''I don't think I did. It don't look just like my handwriting.'' They further testified that a short time thereafter Mr. Gerard did cut and remove from the land the pine timber, and Mrs. Gill said that when Mr. Gerard had finished cutting

and removing the timber, he came by the home and told her that he was through cutting and removing the timber "except for the hardwood and that he would get that when he come back in a few days," and that for her to tell her husband he could clear and put into cultivation the land from which he had cut the pine timber. A Mrs. McGehee, introduced by appellees, testified that she was present at the Gill home when that conversation took place and that Gerard said "that he was through with the pine and he would come back and get the hardwood," and that Mrs. Gill answered "all right."

When Gerard came back some three years later to cut the hardwood, appellees forbade his doing so. There remained about twenty-five thousand feet of hardwood timber on the land.

Appellees introduced two other witnesses, but their testimony has little, if any, bearing on the question under consideration. On the part of appellant, Mr. Gerard testified that at the time he procured this deed, he was engaged in the timber business and that for convenience he carried with him a number of deeds already prepared, with certain blanks for insertion of the consideration, description of the land, and date of the deed, as he made the purchases of timber; that on this occasion he had some of these prepared deeds; that he did purchase this timber from appellees for $800 and that he then filled in these blanks, as agreed with appellees, and that Mr. and Mrs. Gill then and there signed the deed; that the deed was made to his wife, appellant, as grantee, to meet required arrangements for him to borrow the money with which to pay for timber he purchased; that he then paid them the consideration of $800 by check; that he did not need or desire a receipt, the check itself being a receipt. The deed was supposedly executed August 27, 1935, and that day acknowledged before Mr. Gerard as a notary public. On that day, he filed the deed for record and it was actually recorded the next day. When he returned

some three years later, within the time mentioned in the deed for removing the timber, appellees forbade his going on the land for that purpose.

In addition to the foregoing evidence, there is in this record two admittedly genuine signatures of each of appellees made by them at a time when they had no reason to think they would be compared with the signatures on the deed. The original deed is also before us. The admitted signatures and those on the deed bear a most striking resemblance. The formation of the letters and the detailed characteristics and general appearance of the signatures have an unusual sameness—so much so that it is perfectly evident to us that the respectively compared signatures were made by the same person. The Gills admit that they signed some document on the occasion of this sale and when confronted with the signatures on the deed, they hesitated to deny they were their signatures. Mr. Gerard was then in the timber buying business and naturally knew that title to timber could not be conveyed by a mere receipt for the purchase price. He knew he had to have a conveyance. This court has used different expressions to describe the conditions under which it is its duty to reverse the chancellor on his finding of fact—such as that the finding is manifest error, clearly erroneous, plainly or manifestly wrong, against the great preponderance, or overwhelming weight, of the evidence. It would unnecessarily lengthen this opinion to here list all of the cases. They will be found collected in Mississippi Digest, vol. 2, under Appeal and Error, key number 1009(1), (2), (3), and the pocket supplement thereto. We now say that the finding of the chancellor is manifestly wrong and that the great weight of the evidence is to the effect that appellees did sign this deed, and we so hold. It will be noted that appellees do not claim that they were induced to sign the deed by fraud, or that any provision was wrongfully inserted therein. The sole issue is whether they did or did not sign it. In addition to this, equity is on the side of appellant. Appellees

admit that they sold appellant the timber and received full pay therefor. The injunction prayed for herein should have been granted. It will be accordingly issued here.

Reversed, and injunction issued as prayed for.

### On Suggestion of Error.

**Griffith, J.**, delivered the opinion of the court on suggestion of error.

A temporary injunction was issued and served pending the hearing in the lower court. The decree of that court had the effect to dissolve the injunction, and, upon reversal, we ordered the injunction reinstated and made permanent. The order entered on our minutes, so far as material to the principal point made in the suggestion of error, recites as follows: ''That the appellees, Luther Gill and Mrs. Ida Gill and each of them . . . are hereby enjoined and restrained from interfering with . . . the appellant Mrs. J. A. Gerard . . . in going on, over and across the following described land . . . for the purpose of cutting and removing from the land aforesaid all the timber and timber like trees measuring eight inches and over growing and lying on said land, etc.'' The order, as to the features quoted, is substantially in the same language as that contained in the temporary injunction.

The main point in the suggestion of error is that this order, as it now reads, will permit the cutting of timber which was not as large as eight inches in diameter at the date of deed which was August 27, 1935, but which has grown to be of that size since the deed date, and cases such as Robertson v. H. Weston Lumber Co., 124 Miss. 606, 87 So. 120, and Armstrong v. Jones, 177 Miss. 359, 170 So. 637, are cited in support of the suggestion. This matter was not mentioned either in the pleading or in the briefs on the original hearing; but we called for a response to the suggestion of error, to which appellant

has replied that she makes no claim to any timber that was not of the stipulated dimensions on August 27, 1935, and consents that the injunction decree may be redrawn so as to insert that restriction.

We, therefore, direct that the decree entered by us on a former day shall be set aside and another decree entered in the same words and figures, except that instead of the words "trees measuring eight inches and over," the words shall be "trees which on August 27, 1935, measured eight inches and over, but not those which since that date have grown to the size mentioned." In all other respects the suggestion of error is overruled.

So ordered.