PAN AMERICAN PETROLEUM CORPORATION *v.* GULLY, State Tax Collector.

(Division A.   June 14, 1937.   Suggestion of Error Overruled Dec. 6, 1937.)

[175 So. 185.   No. 32397.]

**Lotterhos & Travis**, of Jackson, and **Cobb & Jones**, of New Orleans, La., for appellant.

850

Green, Green & Jackson, of Jackson, amicus curiae.

Engle & Laub, and L. C. Gwin, all of Natchez, for appellee.

854

Argued orally by **Fred Lotterhos** and **Lloyd A. Cobb** for appellant and by **C. F. Engle** for appellee.

**Cook J.**, delivered the opinion of the court.

On November 27, 1931, W. J. Miller, State Tax Collector, instituted this suit by filing a bill of complaint in the chancery court of Adams county against the Pan American Petroleum Corporation, appellant herein, seeking to recover from it unpaid taxes on gasoline received in the state of Mississippi for sale or use on the streets and highways thereof, amounting to $150,000; and this appeal is from a decree awarding a recovery of $72,722.30 for the period between April 26, 1928, and November 27, 1931.

The bill of complaint sought recovery on general charges that the appellant had shipped into and received in the state large quantities of gasoline for sale or use on the streets and highways which were subject to an excise tax, which it had not reported to the auditor of public accounts as required by law, and upon which it had not paid the excise tax required by law, and prayed for a discovery of the amount of gasoline shipped into the state by appellant, or received by it during each of the six years next preceding the filing of the suit, and a recovery of the alleged excise tax on the gasoline alleged to have been unreported.

On January 2, 1932, the said W. J. Miller, State Tax Collector, also filed a suit in the circuit court of the First judicial district of Hinds county against the said Pan American Petroleum Corporation, also seeking in a general demand to recover unpaid excise taxes alleged to be due by said corporation upon gasoline purchased and received by it, less 3 per cent. allowed for evaporation or spillage, and less such excise tax as has been previously paid upon gasoline which, under the law, was immune from the imposition of such tax, which it had failed to report to the state auditor, and on which it had failed to pay the tax required by law, amounting to $23,380.16.

After the expiration of the term of office of W. J. Miller

as state tax collector, his successor, J. B. Gully, revived each of the above-mentioned suits, and thereafter the declaration in the Hinds county suit was amended so as to demand recovery for all unpaid excise taxes on all gasoline sold or received in the state of Mississippi by the appellant on and prior to the 1st day of June, 1932, aggregating $79,465.64. This cause proceeded to final judgment on December 22, 1932, the judgment reading as follows:

"Comes, J. B. Gully, State Tax Collector, Plaintiff, by Attorneys, and Pan American Petroleum Corporation. Defendant, by attorneys and submit this cause to the Court for final adjudication, without a jury, in vacation by consent, upon the pleadings and the evidence, all of which were heard and considered by the Court, and the Court finds for the plaintiff for the sum of Eight Thousand Two Hundred Sixty-eight Dollars, twenty-seven cents ($8,268.27), for excise tax on gasoline received and/or sold in Mississippi to Levee Contractors and/or subcontractors, and any agency of the United States of America prior to June 1, 1932, and in full of all claims and demands of the plaintiff against the defendant, as set forth in the original and all amended declarations in this cause.

"But the parties hereto consent that the question of the Claim of the State Tax Collector for the three per cent differential and the tax thereon which is in suit in the Chancery Court of Adams County, Mississippi, is not included herein and the same is not here adjudicated.

"It is therefore considered by the Court that the Plaintiff, J. B. Gully, State Tax Collector for the use and benefit of the State of Mississippi have and recover of and from the Pan American Petroleum Corporation, defendant, the sum of Eight Thousand Two Hundred Sixty Eight Dollars, Twenty Seven Cents ($8,268.27) and all costs of court herein expended for all of which execution may issue.

"This judgment shall be entered by the Clerk of this Court on the Minutes of the Circuit Court in Vacation."

To the Adams county suit, the case now at bar, the appellant filed an answer denying the general allegations of the bill, and incorporated therein a special plea alleging that since April 26, 1928, the excise tax imposed upon distributors of gasoline was measured only by the number of gallons received in the state for sale or use on the streets and highways of the state, less deductions, allowances, and exceptions allowed by law; that gasoline is a liquid product which has no fixed volume, but is subject to expansion and contraction in accordance with its temperature, such expansion and contraction being according to a fixed and determinable formula of .0006 in volume for each Fahrenheit degree of increased heat at atmospheric pressure, which is recognized and established by the United States Bureau of Standards in the petroleum industry; that by means of such formula it is possible to reduce any given gallonage of gasoline at a given temperature and at atmospheric pressure, to the amount of such gas by volume at sixty degrees Fahrenheit as a standard of measurement.

The plea further averred that it is and has been for many years the established trade practice in the petroleum industry in the United States to use the temperature of sixty degrees Fahrenheit as the standard temperature; that for a long period of time gasoline had been sold and handled in the petroleum industry upon a standard basis of gallonage reduced to sixty degrees Fahrenheit regardless of what the actual gross gallonage at some other temperature might be; that said practice is established and recognized by the United States Bureau of Standards; that such Bureau of Standards recognizes that a volume of 231 cubic inches at sixty degrees Fahrenheit constitutes a gallon, and that this fact was known to the Legislature of this state when it enacted chapter 198, Laws of 1928 (repealed and re-enacted by Laws 1928,

Ex. Sess. c. 21), measuring the excise tax imposed by the gallonage received in the state. That from and after the passage of the said act of April 26, 1928, the gasoline tax department of the state auditor's office uniformly construed and applied the said gasoline tax statute as requiring the payment of the excise tax based upon the net gallonage, that is to say, based upon the gallonage reduced to the standard of sixty degrees Fahrenheit, and that by the adoption of the Code of 1930, the Legislature re-enacted said statute (Code 1930, section 4786 et seq.), thereby ratifying and adopting the uniform construction theretofore placed upon said statute.

It was further alleged that since April 26, 1928, the appellant had purchased its gasoline from refineries located outside of the state of Mississippi, for shipment into this state; that when the gasoline was loaded into tank cars at the refineries it was at a temperature considerably above normal atmospheric temperature, and such cars were filled to capacity at that temperature, and thereupon applying the formula above mentioned in accordance with the usual trade practice, the refineries calculated the volume of such gasoline at a standard temperature of sixty degrees Fahrenheit, and billed said gasoline to the appellant upon said standard basis, to wit, at sixty degrees Fahrenheit; and that appellant paid said refineries for said gasoline upon the amount of gallonage so reduced to sixty degrees Fahrenheit, commonly known as net gallonage; that, after said gasoline moved from the refineries into the state of Mississippi, its temperature was lowered to atmospheric temperature from the higher temperature at which it necessarily left the refinery, whereby, when said gasoline was received within the state of Mississippi, its actual volume was considerably less than when it left the refinery; that the actual volume of each tank car when received within the state of Mississippi was unkown; and that it was impossible to establish the actual volume thereof as of that time.

The plea, together with answers to interrogatories propounded to the appellant, contains figures showing the gross gallonage loaded at the refineries for shipment to the appellant within this state; the net gallonage after the same was reduced to volume at sixty degrees Fahrenheit; the number of gallons sold and transferred outside of the state, and number sold to agencies of the United States government, from April 26, 1928 to November 30, 1931; the amount of tax-free gasoline on hand April 26, 1928; and the amount reported to the state auditor for taxation, and the net gallonage after temperature adjustments upon which the tax had been paid.

Appellant filed a further special plea setting up the judgment rendered in the above-mentioned Hinds county suit as res adjudicata of all claims covered in the case now at bar, except such claim as might be based upon the so-called 3 per cent. differential allowed by law.

To these special pleas, the appellee filed a replication averring in substance that the 3 per cent. allowed by law to be deducted from the amounts of gasoline received in the state was intended to cover all loss or shrinkage from wastage, evaporation, or temperature changes, and that such deduction of 3 per cent. as an actual fact, far exceeds all amounts that can be shown to be lost by evaporation, wastage, changes in temperature, or other causes. To the special plea of res adjudicata, the appellant replied that there was no identity of cause of action or parties in the two suits, and that ''The judgment in said cause (Hinds County case) shows that the amount paid was paid specifically for these sales claimed as exempt from the excise tax and made to certain government agencies on levees or government work and this suit (the case at bar) was not brought for excise taxes on any gasoline sold to government agencies and claimed as exempt, but was brought for the difference between the amounts of gasoline received in the state and handled by the said defendant on which the excise tax was owing and the

amount reported by the said defendant to the auditor. The said defendant in its reports to said auditor on gasoline on which it admitted the excise tax was due deducted from the gross receipts of gasoline in the State of Mississippi and arbitrary deduction for alleged shrinkage for differences in temperature and also deducted 3% of the gross then remaining and this suit was brought primarily for the excise tax on the deductions from the gross receipts over and above the 3% deduction allowed by law to cover all causes, and also the actual amount of excise tax charged to and collected from its dealers in the State of Mississippi by the said defendant corporation and not paid to the State of Mississippi."

It was further averred that the said judgment of the circuit court of Hinds county undertook to specifically exempt the case at bar from the operation thereof; that the language of the judgment therein must be so construed as to effect the intent and purpose to exempt the case at bar, although the cause of action in the present suit was incorrectly described in said judgment in the exception clause thereof. It was further therein averred that in no event could the appellant claim any credit against excise taxes owing at the time of bringing the present suit, including excise taxes on gasoline sold to government agencies, over and above the actual amount paid in settlement of the aforesaid judgment, and that to allow any further or other deduction in the actual amount of the settlement made would violate the provisions of section 100 of the Constitution of the state of Mississippi.

Upon the trial of the cause, there was no contention that the 3 per cent. allowance for evaporation, spillage, and other causes allowed by statute was taxable; but the court held (1) that the appellant was not entitled to make temperature adjustments to the sixty-degree standard before reporting gasoline received in the state; (2) that all tax-free transactions in gasoline during the period covered by this suit should be allocated to or deducted

from the opening inventory of tax-free gasoline on hand on April 26, 1928, instead of being deducted from the amount of gasoline received in the state after that date; and (3) that the judgment rendered in the Hinds county suit was not res adjudicata of the case at bar.

We have made the above rather full statement of the pleadings in the case at bar and the said Hinds county suit in order that the issue presented and involved in the disposition of the two suits might appear, but, in view of the conclusion we have reached as to the effect of the judgment in the said Hinds county suit, it will be unnecessary to further consider the adjudications of the court upon the first two points stated above.

The declaration in the Hinds county suit above mentioned sought a recovery of all gasoline excise taxes owing by the appellant to the state of Mississippi up to June 1, 1932, while the bill of complaint in the case at bar sought a recovery of all such taxes owing up to November 27, 1931. The parties in the two suits were identical, and the Hinds county suit sought recovery of excise taxes for the same period of time as that included in the case at bar, and the judgment in the Hinds county case recites that the recovery awarded is "in full of all claims and demands of the plaintiff against the defendant, as set forth in the original and all amended declarations in this cause." Upon its face, this judgment clearly appears to be res adjudicata of all issues involved in the case at bar. The judgment was rendered by a court of competent jurisdiction on pleadings covering the same issues as are involved in the case at bar, and, although it was pleaded as res adjudicata of the issues involved in the case at bar, nearly three years before the trial of this cause in the court below, no direct attack was made thereon, and there was no effort to reopen the case to make any correction in the judgment. The judgment is valid on its face, and there is no charge of fraud in the procurement thereof; but, on the contrary, in the evidence offered to

avoid the effect of the judgment, any charge of fraud in the entry thereof was expressly disclaimed.

The appellee sought to void the effect of the judgment of the Hinds county court by offering the testimony of one of the attorneys who represented him in that case, to the effect that he supposed the Hinds county suit covered only gasoline sold to levee contractors; that while, under the pleadings, all other delinquent taxes could have been collected, he then thought the levee contractors' sales were the only delinquencies of the appellant at that time; and that in settling the Hinds county suit he intended to except the case at bar in such a way as to avoid a plea of res adjudicata thereto. But the only exception appearing in the judgment is "the question of the claim of the State Tax Collector for the three per cent. differential and the tax thereon which is in suit in the Chancery Court of Adams County." This witness also testified that he was not then familiar with the issues involved in the case now at bar, and supposed that the exception in the judgment of the "three per-cent differential and the tax thereon" covered all such issues. But none of the several other attorneys who represented appellee in the Hinds county suit, and who approved and signed the judgment, were offered as witnesses as to their understanding of the issues involved.

In any event, in a collateral attack, the plain, obvious, and unambiguous meaning of the language of a judgment or decree of a court of competent jurisdiction cannot be varied by parol, or by the testimony of attorneys or parties, that the judgment, which adjudicated all issues presented by the pleadings, was not so intended. Neither can it be shown by parol that an exception appearing on the face of the judgment was intended to cover other and different issues from those expressly excepted. The verity of a judgment must find its basis in the record of the cause and in a collateral attack thereon cannot be made to rest upon the recollection, understanding, or intentions of attorneys or parties, which are at variance with the

plain and unambiguous language of the judgment. Until it is reversed or set aside by some direct proceeding begun and prosecuted for that purpose, a judgment of a court of competent jurisdiction is binding between the parties, and the effect thereof cannot be avoided by parol evidence, or evidence of an intended effect different from that which necessarily follows from the language of the judgment, as applied to the issues presented by the pleadings upon which it is based.

The state tax collector was fully authorized by law to represent the state in the matter of collecting the alleged delinquent excise taxes on gasoline; and it is thoroughly established that, where the law permits the state to sue and be sued, the doctrine of res adjudicata has full application against it and its subdivisions. Adams v. Yazoo & Miss. V. R. Co., 77 Miss. 194, 24 So. 200, 317, 28 So. 956, 60 L. R. A. 33; Town of Jonestown v. Ganong, 97 Miss. 67, 52 So. 579, 692; Finch v. Dobbs, 112 Miss. 73, 72 So. 858; 34 C. J. 966; 15 R. C. L. 1029; Freeman on judgments (5 Ed.) section 506.

It is contended, however, that on account of section 100 of the Constitution of 1890 the said Hinds county judgment, which was for a sum less than sued for, could not be pleaded as res adjudicata, except to the extent of the amount actually paid under the judgment. Section 100 of the Constitution reads as follows: "No obligation or liability of any person, association, or corporation held or owned by this state, or levee board, or any county, city, or town thereof, shall ever be remitted, released or postponed, or in any way diminished by the legislature, nor shall such liability or obligation be extinguished except by payment thereof into the proper treasury; nor shall such liability or obligation be exchanged or transferred except upon payment of its face value; but this shall not be construed to prevent the legislature from providing by general law for the compromise of doubtful claims."

The liability of the appellant for the excise tax sued for in both suits was controverted and uncertain, and the

amount thereof was uncertain and unliquidated, consequently section 100 of the Constitution has no application thereto. While the judgment entered in the Hinds county suit recites that the cause was submitted to the court for final adjudication upon the pleadings and the evidence, there was testimony offered to the effect that the judgment was the result of a compromise settlement, but that is here immaterial, for the reason that, as said in Robertson v. Weston Lumber Co., 124 Miss. 606, 87 So. 120, 124, section 100 of the Constitution "does not prevent an agreement by judgment for the ascertainment of an amount which is uncertain in its nature." In the last-cited case it was further said that "But where the amount due the state is in its very nature uncertain, it is competent for the state or the officer having power to represent it, acting in good faith, to consent to a judgment liquidating the amount due. The section was not intended to prevent the entry of a judgment for a less amount than the amount sued for where the claim was unliquidated and not capable of ascertainment by calculation, or some equally certain manner."

In the case of Eastman, Gardiner & Co. v. Adams, 101 Miss. 460, 58 So. 221, wherein it was held that an agreed or compromise judgment for less than the real value of timber cut from sixteenth section land did not violate said section 100, the court said: "The claim of the county or state against appellant was unliquidated, and, in order that a settlement could be had, authority to ascertain and fix the amount thereof must of necessity be lodged somewhere; and since the board of supervisors had full jurisdiction and control of the matter, it follows that this power is lodged with it. Otherwise, no settlement of such a claim could ever be made, except at the end of a lawsuit, in which the amount of damages could not be agreed upon, but must be ascertained by the judgment of the court. It cannot be, therefore, that this character of obligation or liability is embraced within the

meaning of these words, as used in section 100 of our Constitution.''

Upon the contention that this section destroys the conclusiveness of the final judgment on the unliquidated liability of appellant, the language of the court in Adams v. Fragiacomo, 71 Miss. 417, 15 So. 798, 801, wherein there was involved the repeal of a statute without a saving therein of previously existing rights of action, is applicable. The court there said: ''. . . if construed according to contention of counsel, would disable not only the state, but all its subdivisions, from making any concession or agreement in reference to very many subjects as to which it may be of the very highest importance that the power should exist. As a litigant, the state or any corporation named would be precluded from conducting its suit with that freedom of action which is often thought to be invaluable in the progress of litigation. No agreement of counsel, however honestly made, no concession, no compromise, the effect of which would be to diminish or postpone the demand asserted, would be conclusive, and therefore none would ever be accepted. From a consequence such as this the mind shrinks and retreats.''

We think the plea of res adjudicata should have been sustained, and therefore the decree of the court below will be reversed, and a decree will be entered here for appellant.

Reversed, and decree for appellant.