WIRT ADAMS, STATE REVENUE AGENT, *v.* L. FRAGIACOMO.

1. REVENUE AGENT. *Right to sue. Repeal. Code* 1892, § 4; *Ib., ch.* 116.

By the putting into effect, April 2, 1892, of chapter 116, code 1892, entitled "Revenue," which contained no saving of existing rights of action by the revenue agent for the privilege license which a liquor dealer should have paid, the revenue act of 1890 (Laws, p. 11), which alone authorized such actions, was repealed, and the right of action thus lost was not restored by § 4, code 1892. This section, which went into effect November 1, 1892, saved all rights of action then existing, but did not create any.

2. LIABILITY TO STATE. *Legislative power. Const.* 1890, § 100. *Unlicensed retailer.*

Such repeal is not within the prohibition of § 100, constitution 1890, providing that "no obligation or liability of any person, association or corporation held or owned by the state, or levee board, or any county, city or town thereof, shall ever be remitted, released or postponed, or in any way diminished by the legislature, nor shall such liability or obligation be extinguished except by payment thereof into the proper treasury." The word *liability* is used in said section interchangeably with obligation, and not in such enlarged sense as includes the subjection by the revenue act of 1890 of an unlicensed retailer to an action by the state to recover the privilege tax he should have paid.

3. CONSTRUCTION OF STATUTE. *Use of interchangeable words. Intent.*

Although, *prima facie*, the use in a statute of different words or phrases implies an intent that a different meaning attaches to each, if it be apparent from the statute that no different meaning was intended, the mere change in the language will be considered as without significance.

4. SAME. *Legislative intent. Interpretation of words. Extraneous matters.*

In the interpretation of a word in a statute or constitution which has no precise or technical meaning, the primary maxim is to read it to mean what it is commonly understood to express, unless by so doing the plan and meaning of the law-maker is departed from, in which event resort

must be had to other methods of inquiry, restricted always by the prin-
ciple that the meaning of the law is to be discovered within and from
its language.   Extraneous matters can serve only to throw light upon
the language employed, and not to destroy the writing as the exponent
of the legislative will.

FROM the circuit court of the first district of Hinds county.
HON. J. B. CHRISMAN, Judge.
The facts are stated in the opinion.

*Williamson & Potter*, for appellant.

1. Chapter 116, code 1892, entitled "Revenue," is part of
an entire code, adopted and approved by a single act, and
must be construed with § 4, which saves all existing rights
of action.   By a mere inadvertence, when the revenue chapter
was put into effect, April 2, 1892, there was a suspension of
rights of action under repealed statutes until § 4, with its
saving clause, went into effect.   Accordingly, after Novem-
ber 1, 1892, such actions became maintainable, just as if the
entire code had gone into effect the same day.   See *Gibbons*
v. *Brittenum*, 56 Miss., 232.

This was in effect held in *State* v. *Order of Elks*, 69 Miss.,
895, and in *State* v. *Hall*, 68 Miss., 719.   Any other construc-
tion would defeat the legislative intent.   The saving clause
must have a reasonable construction to carry out the just and
obvious purpose of the law.   Sutherland on Stat. Con., § 225 ;
32 N. H., 410.

2. The liability of appellee fixed by the statute is within
the scope of the language used in § 100 of the constitution.
See 20 Fed. R., 188; 36 Iowa, 224; 4 Litt. (Ky.), 65 ; 15
How. (N. Y.), 55; 52 N. J. L., 10; 13 Am. & Eng. Enc. L.,
287; 17 *Ib.*, 2, 3;   *Telegraph Co.* v. *Sullivan*, 70 Miss., 447.
In the latter case, the word "debts" is held to embrace all
penalties recoverable by civil action.   The legislature was
powerless to postpone the state's right of action.

*Calhoon & Green*, for appellee.
Section 100, constitution 1890, is not applicable.   The

question involved is not the liability of defendant, but the power of the revenue agent to sue. The taking away of this power, if it ever existed, by the enactment of chapter 116, code 1892, did not destroy whatever liability there was on the part of defendant. Moreover, the constitution has reference only to contract liabilities, susceptible of ownership and of exchange and transfer. On the questions involved see 39 Miss., 516; 53 *Ib.*, 651; 60 *Ib.*, 897; 64 *Ib.*, 464; 68 *Ib.*, 487; 69 *Ib.*, 92, 683.

COOPER, J., delivered the opinion of the court.

In the year 1891, the appellee carried on the business of a retailer of vinous and spirituous liquors without having obtained a license, and, for so doing, became and was, under the provisions of section 2 of the act of February 24, 1890 (Laws, p. 11), civilly liable to the state for the highest amount he should have paid for such privilege, which was the sum of fifteen hundred dollars. On the second day of June, 1893, the appellant, as revenue agent of the state, brought this suit to recover said sum. The defendant demurred to the declaration as stating no cause of action, which demurrer was sustained, and the plaintiff appeals.

As we have heretofore held in the case of *State* v. *Order of Elks*, 69 Miss., 895, the act of February 24, 1890, entitled "An act to amend the revenue laws," was repealed by chapter 116 of the code of 1892, which chapter became of force on April 2, 1892, and contains no provision for saving pending suits or existing rights. The effect of this decision is sought to be obviated by counsel in the present case on the following grounds: First, it is said that though chapter 116 of the code contains no saving clause, and became operative April 2, 1892, it was a part of an entire code, adopted at one and the same time, and since by § 4 of the code, the provision is made saving all former rights, this, when it became operative November 1, 1892, had the effect of preventing from that time the destructive operation of chapter 116. The sufficient

answer to this contention is that § 4 only preserves *existing* rights, and cannot create one.

But, failing to sustain this position, counsel insist that, by virtue of the act of February 24, 1890, the appellee was liable to the state in an amount equal to the highest tax he should have paid for the privilege of retailing, and that it was not competent for the legislature, either directly or indirectly, to absolve him from such liability, because of section 100 of the constitution, which declares that " no obligation or liability of any person, association or corporation held or owned by this state or levee board, or any county, city or town thereof, shall ever be remitted, released or postponed, or in any way diminished by the legislature, nor shall such liability or obligation be extinguished except by payment thereof into the proper treasury; nor shall such liability or obligation be exchanged or transferred except upon payment of its face value; but this shall not be construed to prevent the legislature from providing by general law for the compromise of doubtful claims."

It must be admitted that this section of the constitution is not happily and clearly expressed, and presents difficulty of interpretation and construction. Unless the word " liability " be read as pleonastic, containing no meaning not conveyed by the word " obligation," it is difficult to limit the scope and effect of the section, for it is a word of broad import and far-reaching in what it does or may contain. All persons who have violated the criminal laws of the state are " liable " thereto; some to punishment, it may be by death, others by imprisonment, and others by subjection to fines or penalties. In *U. S.* v. *Ulrici,* 3 Dillon, 532, a statute provided that " the repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture or liability incurred under such statute unless the repealing act shall so expressly provide; and such statute shall be treated as still remaining in force, for the purpose of supporting any proper action or prosecution for the enforcement of such penalty, forfeiture

or liability." Counsel for the .accused contended that these words could refer only to civil proceedings, and could not be construed as continuing responsibility for criminal acts committed under a statute after its repeal. But Judge Miller, in delivering the opinion of the court, said : " Without attempting to go into a precise definition of each of these words, it is my opinion that they were used by congress to include all forms of punishment for crime; and, as strong evidence of this view, I found, during the progress of the argument, and called the attention of counsel to a section which prescribed fine and imprisonment for two years, wherein congress used the words 'shall be liable to a penalty of not less than one thousand dollars . . . and to imprisonment not more than two years.' Moreover, any man using common language might say, and very properly, that congress had subjected a party to a liability, and if asked what liability, might reply, a liability to be imprisoned. This is a very general use of language, and surely it would not be understood as denoting a civil proceeding. I think, therefore, that this word 'liability' is intended to cover every form of punishment to which a man subjects himself by violating the common laws of the country." The word " liability" has no precise technical meaning, and, therefore, it must be assumed that it was used by the framers of the constitution either in its popular meaning or in some restricted and limited sense. To begin with, then, we find a word of the broadest significance, and we at once ask, how shall it be interpreted? The primary maxim for interpretation is to read it to mean what it is commonly understood to mean. Having done this, we must then consider whether we have in this way approached to or departed from the intention of the makers of the law. If we find that by the use of this rule of construction we are getting away from the scheme or plan and meaning of the law-maker, common sense admonishes us to lay aside the rule, which is a means and not an end, and resort to other and different methods of inquiry, restricted always by the

principle that the meaning of the law is to be discovered within and from its language, and not from extraneous sources of information.    These extraneous matters may throw light upon the language employed, but can serve only to illumine and not to destroy the writing as the exponent of the will of the law-giver.

The mere statement, if it were possible to enumerate them, of the infinite ways by which the citizen comes under liability to the state, and the forms of such liability, would challenge and refute the correctness of an interpretation of the word liability as here used which would withdraw from the legislature all power as affecting those who have become subject thereto.    Liability for violation of statute, or common law liability to fine, penalty or forfeiture; liability in tort and by contract expressed or implied; liability for acts wilfully, negligently or unintentionally done, and for omitting to act when action is made a duty; liability for the civil, and, in some instances, for the criminal, act of an agent or servant, all come within the literal meaning of the language used.    But it is entirely certain that no such purpose was within the contemplation of the convention which framed and put in force our organic law.    It was dealing with reference to a known evil, and its purpose was to use such language as should make effectual the prohibition it imposed. The principal form in which that evil existed was in reference to delinquencies by persons charged with the collection, custody or disbursement of public moneys, and who were by law required to give bond for the faithful discharge of such duties.    Under the constitution of 1869, the delinquent officer was rendered ineligible to hold any office of profit or trust in the state; but experience had shown that this disability imposed no sufficient restraint, and that it was not at all unusual to have appeals made to the legislature by the sureties on official bonds for authority to make compromises with the state, counties and municipalities of known, acknowledged and fixed defaults of this character.    In one

instance, an acknowledged defaulter for public moneys secured the enactment of a law by which a compromise was authorized, and, it having been effected and executed, he was "vindicated," in the language of the day, by being triumphantly returned as a member of the next succeeding legislature.

It was against the power to compromise claims of this character that the prohibition was principally aimed, but its language was so chosen as to include cases of pecuniary obligations of other classes. A careful scrutiny of the language of the entire section shows that the universality of the word "liability" was intended to be restricted; or, perhaps it is more accurate to say that the word cannot be read in its full sense without doing violence to the purpose of the section as a whole. In the first clause of the section it is declared that "no obligation or liability of any person, association or corporation *held or owned* by the state," etc. Now, although in a sense the state may be said to hold or own any liability to which a person, association or corporation may be subject, these words are suggestive that the convention intended by the words "obligation" or "liability" such obligations or liabilities only as fall within the class which are ordinarily spoken of as *held or owned.* In the next clause we find the words "obligation" and "liability" transposed: "Nor shall such liability or obligation be extinguished except by payment thereof into the proper treasury." Now, the strength of the contention that the convention intended to cover liabilities of all character, rests upon the rule that, having used the word "obligation," the broader and more general word "liability" was added, and that to give this word any function to perform, it must be held to mean something not included in the word "obligation."

*Prima facie*, the use of different words implies a legislative purpose that a different meaning shall be attached to them, but no rule of construction can be sound which fails to recognize that there may be, and often is, a change of phraseology

only, without a change of meaning, and when this appears, the mere change of language is considered insignificant. Endlich on Interpretation, § 381, and authorities.  If, therefore, the words "obligation" and "liability" are used interchangeably throughout the law, the inference is that no contrast was intended.  But, going further, we find the declaration to be, "nor shall such liability or obligation be extinguished except by payment thereof *into the proper treasury.*"  The words which we have italicized are applicable, as applied, to the class of fixed and certain claims, but would be wholly inapt in reference to a large class of those falling under the general word "liability."

The next clause is of still more significance—"nor shall such liability or obligation be exchanged or transferred except on payment of its face value."  "Such liability or obligation" means, of course, the "obligation or liability" referred to in the first clause of the statute, and these, it is declared, shall not "be exchanged or transferred except upon payment of its [their] face value."  We must assume that these words were employed in the sense in which, and with reference to those things to which, they are almost universally applied.  A liability which is the subject of "exchange and transfer," and which has a "face value," would unquestionably fall within the meaning of the word "obligation," and we are, from the face of the section alone, led to the conclusion that the words "obligation" and "liability" are used in substantially the same meaning, and that the latter word was employed *ex industria*, rather than for the purpose of giving an entirely new turn and phase to the meaning of the section.

Nor can it be denied that the effect of the construction contended for by appellant would be of far-reaching and appalling consequences.  The general course of legislation, having no direct reference to the subject of the obligations of citizens to the state and its political municipalities, would be seriously and, perhaps in some instances, fatally impaired.

We cannot now conjecture all the limitations it would impose, but the present appeal illustrates one class which we cannot believe it was the purpose of the convention to withdraw in any degree from legislative control. The universal rule is that the repeal of a statute destroys all mere rights which rest entirely and alone on its provisions—those which are created by and conferred by it. And the argument of this case rests entirely upon the proposition that, because, under the statute, a "liability" existed against the appellee which would be destroyed by its repeal, the legislature is deprived of power over the subject so far as to affect the existing liability.

Aside from the restriction on legislative action, the section operated equally upon the levee board and upon the counties and towns of the state, and, if construed according to contention of counsel, would disable not only the state, but all its subdivisions from making any concession or agreement in reference to very many subjects as to which it may be of the very highest importance that the power should exist. As a litigant, the state or any of the corporations named would be precluded from conducting its suits with that freedom of action which is often found to be invaluable in the progress of litigation. No agreement of counsel, however honestly made, no concession, no compromise the effect of which would be to "diminish" or "postpone" the demand asserted, would be conclusive, and therefore never would be accepted.

From a consequence such as this the mind shrinks and retreats. A change so radical and serious can only be believed to have been contemplated when the language used is clear and unambiguous, and sufficient to impel to but one conclusion. Such, in our opinion, is not the character of the section of the constitution we are called on to construe, and we therefore hold that, in relation to the matter now under consideration, the legislative power is not at all restrained.

*Affirmed.*