EASTMAN, GARDINER & CO. *v.* WIRT ADAMS, STATE REVENUE AGENT.

[58 South. 221.]

BOARD OF SUPERVISORS. *Claims for cutting timber. Sixteenth sections. Authority to settle Code 1906, Sec. 4701. Constitution 1890, Sec. 100.*

Under Code of 1906, Sec. 4701, giving boards of supervisors jurisdiction and control of sixteenth sections situated in their counties, etc., such boards have the right to compromise and settle unliquidated claims for damages for the wrongful cutting of trees on such land, and this section of the Code is not violative of Constitution of 1890, Sec. 100, providing that no liability to the state shall be remitted or in any way extinguished, except on payment of its face value, but that the legislature may provide by general law for the compromise of doubtful claims.

APPEAL from the chancery court of Jones county.
HON. SAM WHITMAN, JR., Chancellor.

Suit by Wirt Adams, state revenue agent against Eastman, Gardiner & Company. Judgment for plaintiff, and defendant appeals.

The facts are fully stated in the opinion of the court.

*Shannon & Street,* for appellant.

At the October term, 1902, the board of supervisors fixed the value of the timber cut by appellant at six hundred dollars. Appellant paid that sum and it was accepted by the board in full settlement and satisfaction of all demands against appellant. This was done by proper order entered on its minutes. It is presumed that the board of supervisors knew something of the value of the timber cut and its finding that the value was six hundred dollars is conclusive.

But it is said that the board of supervisors had no authority to settle the case—its own case; that it was a compromise settlement and that the amount accepted was inadequate. Well, where is the proof that the amount accepted by the board of supervisors is or was inadequate? The order of the board is entitled to full faith and credence and when it fixed the value at six hundred dollars, that is the value in the absence of fraud. There is not only a lack of testimony in the record that this was inadequate, but the appellee expressly states that, so far as he personally knows, this was a fair value. At any rate, there is nothing in the record to show that it was not a fair value.

The complainant does not offer to return the six hundred dollars with interest, nor does he offer to credit appellant with it in any way.

We submit that, under the laws of this state, the board of supervisors and not the appellee, has full jurisdiction of sixteenth sections, and the board—and not appellee—has the right to fix the value of the timber.

Aside from any law on the proposition, we submit as an abstract proposition, without fear of successful contradiction, that any board or person or corporation having authority to bring a suit, has authority to compromise and settle it.

By Sec. 4150, Code 1892 (Code 1906, Sec. 4701) the boards of supervisors of the several counties are given

full control of sixteenth sections. And, by the Laws of 1898, Ch. 41, the board of supervisors is given authority to sell sixteenth section timber. And this act was upheld and declared constitutional in the case of *L. N. Dantzler Lumber Co.* v. *State,* 53 South. 1; *Smith County* v. *Eastman Gardiner & Co.,* 53 South. 7; and *Beasley* v. *McElhaney et al.,* 53 South. 8. It is held in the *Dantzler case, supra,* that "inadequacy of price does not vitiate a sale of timber on school lands in the absence of fraud; the determination of the price being discretionary with the county supervisors, whose decision will not be disturbed, in the absence of fraud or collusion." There is nothing in the law, Ch. 41, Laws 1898, Code 1906, Sec. 4702, which says that the board only has authority to sell the timber before it has been cut and not after it has been cut. So we contend, that the supervisors have authority to sell the timber, whether it is standing on the land or already cut. And, in selling the timber, they—and they alone—have the power and authority to fix its value and when they do fix it, their determination is final and binding, in the absence of fraud or collusion.

Sec. 100 of the Constitution has nothing in the world to do with a case like this. It is not a question of compromising a fixed and definite amount due the county, but is a case of the board having authority in the premises fixing the amount due and allowing it to be paid. After the board had fixed the amount due at six hundred dollars, it probably would have had no authority to accept a less sum. But it did not compromise the claim at all. The value of the timber cut was six hundred dollars, because the board said, by proper order, that six hundred dollars was the value. The board did not compromise this, but collected it in full as shown by the order attached to the pleadings and depositions. Sec. 100 of the Constitution says that the legislature may not do certain things, but it has absolutely no reference to a

case of this kind where full value is fixed, paid; and accepted. Appellee is welcome to all the consolation he may be able to get out of Sec. 100 as applied to the facts in this case. For a thorough discussion of Sec. 100 of the Constitution, see *Adams* v. *Fragiacomo,* 71 Miss. 417, which sustains our contention.

*Henry Hilbun,* for appellee.

We submit that the compromise entered into by Eastman, Gardiner & Company, and the board of supervisors of Jones county, is plainly and manifestly in direct violation of Sec. 100 of the Constitution of this state; and therefore void and of no effect, and the court below did not err in so deciding.

Sec. 100 of the Constitution of 1890 is as follows: "No obligation or liability of any person, association, or corporation, held or owned by this state, or levee board, or any county, city, or town thereof, shall ever be remitted, released or postponed, or in any way diminished by the legislature, nor shall such liability or obligation be extinguished except by payment thereof into the proper treasury; nor shall such liability or obligation be exchanged or transferred except upon payment of its face value; but this shall not be construed to prevent the legislature from providing by general law for the compromise of doubtful claims."

It appears that appellant, Eastman, Gardiner & Company, entered upon the sixteenth section described in the bill in this cause, and cut and removed, for purely commercial purposes, the timber on said section, without authority of law; that after the said timber had been cut and removed, and after suit had been filed against them by the county for unlawful cutting and removal of said timber, and while said suit was pending, and before there had been any adjudication by the courts on the merits, there was a compromise settlement made by the board of supervisors of Jones county and the said Eastman,

Gardiner & Company, whereby the board of supervisors, in consideration of the payment of three hundred dollars, attempted by an order to release Eastman, Gardiner & Company from all liability for this obligation. The order made by the board which is set forth in the record in this cause, shows on its face that this settlement was a compromise, and not the full payment of the obligation.

No testimony is needed to establish this fact.

In the case of *Morris Ice Company* v. *Wirt Adams, Revenue Agent,* 75 Miss. 410, this section of our Constitution was construed. It seems that on February 3, 1882, the municipal authorities of the city of Jackson, attempted by ordinance to release and abate certain claims for taxes due and owing by the Morris Ice Company to said municipality. The revenue agent, ignoring this offer on the part of the municipal authorities to release this obligation, instituted a suit for the recovery of said sum. Our court in deciding this case, and in construing Sec. 100 of the Constitution, said:

"The best that can be said for appellant, is, that the municipal authorities, after all taxes now sought to be collected were due, and most of these long overdue, endeavored to make a present of them all to the delinquent. Clearly this was beyond the power of the municipal authority. These taxes were a liability, and the power to remit or release them was beyond the reach of the municipality."

This court again construed this section of the Constitution, in the case of *Jackson Electric Railroad, Light & Power Co.* v. *Wirt Adams, State Revenue Agent,* 79 Miss. 408. It seems in this case that the municipal authorities of the city of Jackson attempted to refund the sum of fifteen hundred dollars, being the money of the city, to Carnes & Corson, contractors. The revenue agent brought suit for the recovery of this amount, and the court held that a municipality is powerless, under

the Constitution of 1890, Sec. 100, to refund money of the city, which was forfeited to the city by a breach of contract in respect to public work.

Counsel for appellant, in their brief, insist that this section of the Constitution does not apply to this class of obligations, and that the board of supervisors had authority to compromise this obligation. While it is true that a case identical with this case has never been passed upon by our supreme court, yet, in the case of *State* v. *Fragiacomo,* 71 Miss. 418, the court in construing this section of our Constitution, on page 423, said:

"It was against the power to compromise claims of this character that the prohibition was principally aimed, but its language was so chosen as to include cases of pecuniary obligations of other classes."

The legislature of this state, acting under the authorities conferred by Sec. 100 of the Constitution, has passed laws defining doubtful claims, the only kind we submit that can be compromised, and providing the manner in which the compromise can be made. Sec. 1680, Code of 1906, is as follows:

"A doubtful claim of the state, or of a county, city, town, village, or levee board, is one for which judgment has been rendered, and for the collection of which the ordinary process of law has been ineffectual."

The claim in this case was against Eastman, Gardiner & Company, an abundantly solvent corporation. Suit had been filed for the collection of the obligation; but it was compromised before any judgment on the merits had been rendered, and before an attempt was made to collect by ordinary process of law.

Sec. 1681, of the Code of 1906, provides the manner this compromise, if a doubtful claim as defined above, can be made.

"The governor on the advice of the attorney-general or state revenue agent, may upon application of the de fendant proposing a compromise, settle and compromise

101 Miss.—30

any doubtful claim of the state, or of any county, city, town, village or of any levee board, against such defendants, upon such terms as he may deem proper, the board of supervisors in case of a county, and the municipal authorities in the case of a city, town, or village, and the levee board, in the case a claim of a levee board, concurring therein."

This claim against Eastman, Gardiner & Company was not a doubtful claim. It was against an abundantly solvent corporation.

The constitutional convention, in ordaining this section of our Constitution, undoubtedly intended to put it beyond the power of the legislature of the state, and all other authorities of the state, or the subdivision thereof, to release or compromise obligations of this character; that it must have been their intention in ordaining this section, to see to it that persons or corporations owing the state, or any of the legal subdivisions thereof, should pay the full amount of their obligation into the proper treasury. We have not found in the law defining the powers and duties of the board of supervisors, any authority whatever conferred on this board to compromise claims of this character. This was a claim for unliquidated damages. The amount should have first been ascertained in a court of competent jurisdiction, after hearing the evidence as to the value of the timber cut and removed from this section. After the amount had been ascertained in this court, then Eastman, Gardiner & Company, under the law, should have been required to pay the full amount of this obligation into the proper treasury. This was no doubtful claim. The board of supervisors had no authority to compromise with a solvent corporation, a liability which could have been established without question, in any court of competent jurisdiction.

It was manifestly the intention of the makers of our Constitution that public obligations should be paid in

full into the proper treasury, just as other obligations are paid.

The board of supervisors is purely a creature of statute; its powers and authority are defined by the statute. It is utterly powerless to exceed this authority granted in express terms. In justification of its every act, the board must be able to point to a statute conferring authority to act. It has no common law existence; no inference and presumption can be indulged in to its favor; it is a creature of the lawmaking body of the state. It cannot possibly have any greater powers than the legislature—the fountain cannot rise higher than its source.

Sec. 100 of the Constitution clearly says.that, ''No obligation or liability of any person, association, or corporation, held or owned by the state, or levee board, or any county, city or town, thereof, shall ever be remitted, released or postponed, or in any way diminished by the legislature.'' If the legislature of the state, the body creating the board of supervisors and defining its powers, cannot diminish a public obligation, then how can the board, being the creature of the legislature exercise any such power?

The case of *Dantzler Lumber Co.* v. *State*, 53 South. 1, relied upon by counsel for appellant as conclusive of this case, is not at all in point. That was a case where timber on sixteenth sections was sold by the board of supervisors by virtue of the plain statute, Sec. 4701, Code of 1906. This is not the case now before the court. Let counsel for appellant cite this court a statute granting in express term the board of supervisors the right to compromise an obligation against a solvent concern, the amount of which could have been established beyond question, in any court of competent jurisdiction.

No argument however plausible, and no logic however powerful, can ever blend and unite the questions at issue in the *Dantzler case* and this case.

Argued orally by *C. S. Street,* for appellant.

Argued oraly by *Chalmers Alexander*, for appellee.

Smith, J., delivered the opinion of the court.

Appellee instituted this suit in the court below to recover of appellant damages, on behalf of the state, alleged to have been sustained by reason of the cutting by appellant of timber on sixteenth section land. From a decree in his favor, this appeal is taken.

We will pass by all preliminary matters, and address ourselves solely to what appears to be the merits of this controversy. Some time prior to the institution of this suit, appellant had cut timber from sixteenth section land, and the board of supervisors of Jones county, in which county the land was situated, instituted a suit in the chancery court of that county to recover the value thereof. On application of the defendant, this suit was removed to the federal court at Meridian. While the suit was pending the board of supervisors fixed the value of the timber cut at three hundred dollars and accepted from appellant this sum in full settlement thereof, and an agreed decree reciting this settlement was entered in the federal court. The contention of appellee is that the timber, in fact, was worth more than three hundred dollars, that under the provisions of Sec. 100 of our state Constitution, the board of supervisors was without power to accept any sum less than the real value of the timber in settlement therefor, and that, consequently, the action of the board was a nullity, and did not operate as a discharge of appellee from liability for the actual value of the timber.

Under Sec. 4701 of the Code of 1906, the boards of supervisors of the several counties in which are situated sixteenth section lands have, under the general super vision of the land commissioner, jurisdiction and control thereof, and of all funds arising from any disposition thereof. When this timber was cut by appellant, it

therefore became the duty of the board of supervisors
of Jones county to collect from it the value thereof, and
to institute whatever proceedings necessary to enable
it so to do. The claim of the county or state against
appellant was unliquidated, and, in order that a settle-
ment could be had, authority to ascertain and fix the
amount thereof must of necessity be lodged somewhere;
and since the board of supervisors had full jurisdiction
and control of the matter, it follows that this power is
lodged with it. Otherwise, no settlement of such a claim
could ever be made, except at the end of a lawsuit, in
which the amount of damages could not be agreed upon,
but must be ascertained by the judgment of the court.
It cannot be, therefore, that this character of obligation
or liability is embraced within the meaning of these
words, as used in Sec. 100 of our Constitution.

In *State* v. *Fragiacomo,* 71 Miss. 425, 15 South. 798,
this court, in responding to the contention of counsel
that these words embraced liabilities of every character
to the state and its subdivisions, used this very apt
and pertinent language: "Aside from the restriction
on legislative action, the section operated equally upon
the levee board and upon the counties and towns of the
state, and, if construed according to the contention of
counsel, would disable not only the state, but all its sub-
divisions, from making any concession or agreement
in reference to very many subjects as to which it may
be of the very highest importance that the power should
exist. As a litigant, the state or any of the corporations
named would be precluded from conducting its suits
with that freedom of action which is often found to be
invaluable in the progress of litigation. No agreement
of counsel, however honestly made, no concession, no
compromise, the effect of which would be to 'diminish'
or 'postpone' the demand asserted, would be conclusive,
and therefore never would be accepted. From a con-
sequence such as this the mind shrinks and retreats. A

change so radical and serious can only ˙be believed to have been contemplated when the language used is clear and unambiguous, and sufficient to impel to but one conclusion.''

Since it does not appear that this settlement was tainted with fraud or collusion, it must be held to be valid, and, consequently, the decree of the court below is reversed, and the bill dismissed.

*Reversed and dismissed.*