15599

COOLEY *ET AL.* v. S. C. TAX COMMISSION.

EX PARTE: W. G. QUERY AND JOHN P. DERHAM AS MEMBERS OF SOUTH CAROLINA TAX COMMISSION

(28 S. E. (2d), 445)

October Term, 1943.

*Mr. Christie Benet* and *Mr. J. B. S. Lyles,* both of Columbia, S. C., and *Mr. H. L. Erckmann,* of Charleston, S. C., and *Messrs. Wharton & Hall,* of Summerville, S. C., appeared as Counsel for Plaintiffs-Executors.

*Mr. Douglas McKay,* of Columbia, S. C., and *Mr. Lionel K. Legge,* of Charleston, S. C., Counsel for Petitioners, *W. G. Query* and *John P. Derham,*

*Attorney General John M. Daniel* and *Assistant Attorneys General M. J. Hough* and *T. C. Callison,* all of Columbia, S. C., and *Mr. John I. Cosgrove* and *Mr. Huger Sinkler,* both of Charleston, S. C., Counsel for Defendants,

December 9, 1943.

*Per Curiam:*

This is a proceeding in the original jurisdiction of the Court, brought by the executors of the estate of Cornelia W. Roebling, deceased, involving the liability of the estate for income and inheritance taxes. The defendants are the South Carolina Tax Commission, and Honorable John M. Daniel, Attorney General. For the purposes of the limited problem now before the Court and hereinafter specifically defined, it suffices to say that the principal issue made by the complaint and answer is whether the domicile (resi-

dence?) of the testatrix at the time of her death and for some years prior thereto was in the State of South Carolina, so as to subject the estate to liability for inheritance and income taxes under the laws of this State relating to residents of the State (see Code, Secs. 2480, 2437).

The case was referred by this Court to Harold A. Mouzon, Esq., a Charleston attorney, as Referee, to take the testimony of the parties and to make findings of law and fact on the issue above stated. While the case was thus under reference, and after hearings before the Referee had begun, a compromise agreement was entered into between the executors of the estate and the Attorney General (the latter acting on behalf of the South Carolina Tax Commission) under the terms of which the estate agreed to pay, and the Attorney General agreed for the State to accept, the sum of $400,000.00 in full settlement of all claims of the State of South Carolina for income and inheritance taxes which the Tax Commission had contended were payable by the estate.

In this state of the case, before the settlement was consummated by the payment of the agreed amount, and some weeks after the settlement agreement was entered into, a petition was filed with this Court by two of the three members of the Tax Commission attacking the compromise settlement on a number of grounds. The petitioners describe themselves as "W. G. Query and John P. Derham, as members of the South Carolina Tax Commission," but no reason is given in the petition for the failure of the third member thereof to join in it. The counsel who signed the petition as attorneys for the petitioners are two eminent lawyers, one residing in Charleston and one residing in Columbia, neither of whom has any stated connection with the Tax Commission. The general counsel of the Tax Commission did not sign the petition.

Attached to the said petition is a notice of motion for an order "disapproving such settlement and any other settle-

ment of the liability of the estate of the above-named decedent to the State of South Carolina for inheritance or income taxes until the issue of domicile of said decedent now pending in said cause shall have been adjudicated and determined."

Upon said petition and motion, Associate Justice Stukes of this Court made an order granting leave to file the petition and motion, providing for a hearing before this Court on the matters therein referred to at a stated time, and restraining the consummation of the compromise settlement pending the hearing of the matter.

To the above-stated petition the Attorney General interposed a demurrer and also served an answer and return. There is no pleading on behalf of the third member of the Tax Commission who did not join in the making of the petition.

In broad outline the issue made by the petition and motion above referred to is whether, under the facts of this case, the making of a compromise settlement of the tax liability of the Roebling estate by the Attorney General was within or exceeded the powers of the Attorney General.

The matter was heard before this Court on the petition and motion above referred to, and the sole matter presented to and considered by the Court at said hearing was the above-stated question as to the power of the Attorney General to make a compromise settlement of the character in question. And that is the sole question with which we deal in this opinion. In other words, none of the questions of law or fact presented by the complaint and answer in the original cause are now before the Court or are in any way adjudicated by anything stated in this opinion.

In the above light it will be understood that wherever we refer hereinafter to the pleadings (except where otherwise stated) we are referring to the petition and motion of Messrs. Query and Derham, as members of the South Carolina Tax Commission, and to the answer and return thereto.

. The facts that need to be stated for a full understanding of the problem herein dealt with, are as follows:

The net estate of the testatrix, as appraised for inheritance and estate tax purposes, is approximately $6,550,000.00. The approximate value of such of the property of the estate as is located within the State of South Carolina is $200,000.00. The amount of the State inheritance tax on the whole estate as calculated by the Attorney General would be $593,200.00. As calculated by the Tax Commission the tax would be $600,000.00. The claims of the State for income taxes, as calculated by the Attorney General, would amount to $150,-000.00 and by the Tax Commission, to $200,000.00. The amount of income taxes collectible would be $600,000.00 or more if fraud were established in connection with the failure to file annual returns, so as to render the statute of limitations inapplicable, but the record discloses no claim that fraud is involved. Thus it appears that the amount of the State's claim, if fully sustained, is somewhere between $743,200.00 and $800,000.00.

The matters involved in the original complaint first came to the attention of the Tax Commission in July, 1942, when the attorney who had been the personal counsel of the testatrix in New Jersey addressed the Tax Commission on the subject of the domicile of the testatrix, evidently in response to inquiries that had been made of him by the inheritance tax examiner of the Commission. The conclusion of his letter is: "Unless I hear from you otherwise I shall assume that it is in order for the executors to file with you the regular nonresident form of transfer inheritance tax return, as now contemplated."

In reply to this letter, under date of July 9, 1942, the inheritance tax examiner said among other things: "It is in order for you to file with us the regular nonresident affidavit form in connection with this estate * * *."

The attorney replied to this letter under date of July 21, 1942, saying among other things: "From your statement

that it is in order to file with the Commission the regular nonresident form of return for this estate, I am assuming and am so advising the executors, that the Commission is now fully satisfied that Mrs. Roebling was domiciled in the State of New Jersey at the time of her death and that the estate need concern itself only with the matter of preparing and filing as soon as possible the South Carolina return. If I am in anywise incorrect in this assumption, you will please advise."

The inheritance tax examiner replied to this letter under date of July 23, 1942, referring to the requirements of the South Carolina law relating to the time of filing a nonresident return and indicating a willingness to grant an extension of thirty days without penalty.

Subsequent to this correspondence and to the filing of the nonresident inheritance tax return it was represented to the Tax Commission that certain information relative to the domicile of the testatrix at the time of her death, not available or known to the Commission, justified further inquiry into the situation from the standpoint of the liability of the whole estate for inheritance taxes and also income taxes on the theory that the testatrix was domiciled in the State of South Carolina at the time of her death. As the result of the representations made to the Commission in regard to these matters a conference was held between the Tax Commission, acting through two of its three members and its general counsel on the one hand, and John L. Cosgrove, Esq., and Huger Sinkler, Esq., attorneys practicing in Charleston, S. C., on the other. At this conference the Commission was advised by its general counsel that in his opinion the matter was one with which the Attorney General alone had authority to deal, in respect to the making of any settlement or the trial of any litigation that might be involved.

At some stage of these discussions, the Tax Commission came to the conclusion that private counsel should be em-

ployed for the purpose of further dealing with the situation. The reasons which actuated the Commission, and the course followed by it, are thus set forth in the answer of the Commission and of the Attorney General to the original complaint, as follows: "In view of the large sums involved and the intricacies and complexities of a case of this character, as reflected in the decisions of the Supreme Court of the United States and other Courts dealing with the question of domicile, and the extensive labor required to develop the facts relating to domicile and to prosecute an appropriate action thereon, if warranted, South Carolina Tax Commission was of the opinion that special counsel should be employed for the purpose of making an investigation of all the facts relating to the residence and domicile of the decedent. Special counsel, it was believed, would have the time to explore the facts, particularly in the City of Charleston and in the State of New Jersey, for the purpose of advising the Commission as to the proper course to be followed, the Commission having only a single counsel whose time is fully occupied with the regular duties of his office. The Commission, thereupon, requested the Attorney General of South Carolina for permission to employ special counsel for these purposes and the Attorney General, pursuant to the powers vested in him as the Supreme Law Officer of the State of South Carolina, authorized and directed the employment of special counsel in this case to represent and protect the interests of the State in respect to the collection of all taxes which might be due it by said decedent or her estate."

Correspondence between special counsel thus employed and representatives of the estate followed, and proceedings were instituted on behalf of the Commission, by the Attorney General and the special counsel, for the purpose of bringing the administration of the estate within the jurisdiction of the Probate Court of Charleston County, this being a step in the process determined upon for the purpose of ob-

taining an adjudication of the liability of the estate for the inheritance and income taxes in question.

In this situation the executors of the estate, desiring to obtain a determination of the domicile of the testatrix by this Court, instituted the present action in the original jurisdiction of the Court for the purpose of obtaining an order restraining the Commission from further prosecuting the proceedings in the Probate Court, and of obtaining the adjudication of this Court on the question "whether the domicile of the decedent was in the State of New Jersey as contended by the plaintiff or in the State of South Carolina as contended by the defendants * * *." The Attorney General was joined in this proceeding as a defendant. By consent of all of the litigants this Court accepted jurisdiction by an order dated April 12, 1943. The order referring the cause to Harold A. Mouzon, Esq., of Charleston, as Referee, directs the Referee to take the testimony and make findings of fact and law "on the question whether the testatrix was domiciled in the State of New Jersey or in the State of South Carolina at the time of her death on May 2, 1942, and if she was domiciled in South Carolina at that time, the question of how long she continued to have her domicile in South Carolina prior to her death." The appearances for the defendants in this cause were made by the Attorney General, the general counsel of the South Carolina Tax Commission and Messrs. Cosgrove and Sinkler as special counsel. Hearings were begun before the Referee on June 17, 1943. On June 28, 1943, when counsel and their witnesses were assembled at the Court room of the Charleston Court house to resume the hearings the settlement in question in this cause was concluded, and was expressed to be subject to the approval of the New Jersey Court having probate jurisdiction and of this Court

The settlement figure of $400,000.00 in discharge of all liability for both inheritance and income taxes on the part of the estate was fixed following settlement discussions and

negotiations which began on June 2, 1943. The first offer of settlement was in the amount of $250,000.00. This offer was received by the special counsel and while not approved by them was transmitted both to the Tax Commission and to the Attorney General. A conference on the subject was held, attended by two of the three members of the Commission, the general counsel for the Commission, the inheritance tax examiner and the special counsel. The general counsel for the Commission again expressed the opinion that the Attorney General was vested with the sole authority to settle or try the case, and that the matter was not one for disposition by the members of the Commission. Thereupon the special counsel were directed to refer the settlement proposal to the Attorney General. This was done. The result of these conferences was that the proposal was rejected.

On June 17, 1943, the special counsel received an offer of settlement in the amount of $300,000.00 but upon the recommendation of the special counsel the Attorney General refused this offer. It was then that the case proceeded to trial before the Referee, and as hereinbefore stated, when the parties met on June 28, 1943, to go forward with the trial, that the $400,000.00 settlement was made. The special counsel evidently knew that an offer of this amount was available or likely to be made, and had discussed the matter with the Attorney General prior to the time of the hearing. The Attorney General authorized the making of a settlement if such an offer were made, and the offer having been made it was immediately accepted, and the Tax Commission immediately apprised of such acceptance.

Up to the time of the making of the settlement, and apparently for some weeks afterwards, neither the Attorney General nor the special counsel employed by him had any information to lead them to believe that the Commission opposed the particular settlement that was made, or that it was their position that the case was of a character that was not susceptible of settlement under the law, or that in the opinion

of the members of the Commission or of any of them the Attorney General and the special counsel employed by him were without power to commit the Tax Commission and through the Commission the State of South Carolina to a compromise settlement. At some time not disclosed by the record, subsequent to the making of the settlement and before September 23, 1943, two of the members of the Tax Commission indicated their dissatisfaction with the settlement as made, and under date of September 23, 1943, obtained from Mr. Justice Stukes of this Court the order hereinbefore referred to, permitting the filing of a petition and motion on behalf of two of the three members of the Tax Commission, bringing before the Court the objections of the two members of the Commission to the consummation of the settlement, and providing for a hearing before this Court on the matters referred to in the petition and motion, as hereinbefore related. In the petition and motion upon which that order is made, the following grounds of attack upon "the contemplated settlement" are stated: (1) That the contemplated settlement is contrary to sound public policy, in that the fundamental issue of the decedent's domicile, and consequently the State's right of taxation, has not been adjudicated; (2) that the amount to be paid in said settlement is less by several hundreds of thousands of dollars than the amount of taxes due by said estate if the decedent was in fact domiciled in South Carolina; (3) that if said decedent was in fact not domiciled in South Carolina, that State is not entitled to any taxes from her estate except in respect to real property within said State, and in good morals should not accept more; (4) that no officer or agency of said State has the right on behalf of said State to compose or compromise a claim for taxes due the State where the issue is not only the amount of taxes due, but also the right to tax; (5) that the Attorney General has not the power or right to make a settlement of such nature where a majority of the members

of the South Carolina Tax Commission do not approve, but, on the contrary, oppose the same.

In the view we take of the case these grounds raise the single issue whether the Attorney General of South Carolina, when representing the South Carolina Tax Commission at its request in a pending case involving the determination whether the State of South Carolina is entitled to collect inheritance taxes on property situate outside of the State and taxes on income collected and deposited in another state by one claimed to be a nonresident of this State, has the power under the circumstances of this case to enter into a binding compromise agreement without the adjudication of the legal issue (domicile) upon which the right of taxation depends, and for an amount less than the amount which would be recoverable by the State in the event that it should be finally held that the taxpayer was at the time of his death and for some years prior thereto domiciled in the State of South Carolina.

It will be observed that as we have stated the issue in this case, we are not dealing with the broad question of the power of the Attorney General to compromise inheritance or income tax claims made by the South Carolina Tax Commission in the performance of its duties where no litigation is involved. Nor are we dealing with the question whether, in the event of a disagreement between the Attorney General and the Tax Commission as to what is the proper course to pursue on the question of instituting a suit in the name or on behalf of the Tax Commission, or to defend one, the Attorney General may, proceed in defiance of the expressed views of the Tax Commission. Although in the brief filed by the Attorney General and the special counsel the powers of the Attorney General, inherent in his office and arising out of the common law, or conferred by statute, are learnedly discussed, we find no occasion to go into that field of jurisprudence. And in order that there may be no misapprehension as to the scope of the rulings made herein, let it be fur-

ther said that we deem it unnecessary to decide and therefore are not to be taken as passing upon, by implication or other-' wise, the question raised by the plaintiffs as to the right of the Tax Commission to employ private counsel to resist the action taken or proposed to be taken by the Attorney General. We think that the discussion of such matters would tend merely to confuse the much narrower issue which is presented by the facts in this case as hereinbefore stated.

Limiting ourselves to the precise question presented by the peculiar facts of this case, we find the situation to be that the State of South Carolina acting by counsel for whom provision is made in the Constitution and statutes of the State, with the knowledge and acquiescence of the State agency directly charged with the handling of the problem in question, came to the conclusion that the best interests of the State lay in the settlement of the litigation. Its counsel had before him a settlement proposal which represented substantially more than fifty percent. of the amount he deemed to be involved and he was dealing with contentions on the part of the State involving matters of law and fact about which he believed there was serious doubt. Presumably his judgment was affected by the fact that the Commission had dealt with the estate as that of a nonresident in thus acting upon the detailed factual representations of the attorneys for the executors as to the domicile of the testatrix, and that this course of dealing on the part of the Commission had represented its considered judgment based upon full investigation of available sources of information.

Nowhere in the record is there the slightest suggestion of fraud on the part of the executors or their attorneys in the course pursued by them, or in the representations made by them; nor under the motion challenging the settlement in question, and in the petition made in support thereof, is it suggested that any of the factual considerations which the executors presented and the Commission and the Attorney General acted upon are erroneous.

And finally the record is clear that the Attorney General has not acted otherwise than in good faith, or with any other purpose than to serve the best interests of the State.

The contention of the petitioners that aside from all other considerations, the present case involves the right of the State to tax and that no officer or agency of the State has the right or power to deal with this question except to assert the right (or, presumably, to conclude in good faith that the right does not exist) does not appear to us to be controlling of the question presented in this cause, plausible though the argument may at first appear. The Attorney General has asserted no such right as is involved in the contentions stated. He has merely undertaken to appraise, in a pending judicial proceeding, the possibility of the State establishing a claim to the right to tax which the Tax Commission itself failed to assert until after the Attorney General and private counsel intervened in the situation and to give effect to his evident conclusion that there is substantial doubt as to the ability of the State to sustain the contentions made by him and special counsel on its behalf.

Having reached this conclusion, and finding that notwithstanding the same, he was able to obtain the sum of $400,-000.00 for the State, he undertook to enter into a settlement agreement which in the light of the petitioners' contentions involves no element of criticism except the view that since the Attorney General is not satisfied that the State can recover the full amount of taxes that would be collectible if the questions in issue were decided in favor of the State, he is not possessed of power to make a settlement to bring into the coffers of the State this sum obtainable by it. This contention we reject.

While we rest our conclusions upon the peculiar facts of this case, further than solely upon a consideration of the broad powers of the Attorney General inherent in the functions of his office, we have given full consideration to the ap-

.plicable statutes and the authorities dealing with the under-lying judicial questions.

The office of the Attorney General is created by the Constitution. Art. IV, Sec. 24; Art. V, Sec. 28. He is required to appear for the State in the Supreme Court in the trial and argument in said Court of all causes, criminal and civil, in which the State is a party or interested. Code 1942, Sec. 3114.

He is given the power to be present at the trial of any cause in which the State is a party or interested, "and, when so present, shall have the direction and management of such prosecutions and suits." Code 1942, Sec. 3116.

When called upon by a department of the State government, as he was in this case, he is directed to consult and advise with the officials of such department on questions of law relating to their official business. Code 1942, Sec. 3120. He is required to conduct all litigation which may be necessary for any department of the State government or any of the members connected therewith, and it is only upon his advice and through his action that any such department may employ counsel. Code, 1942, Sec. 3194. And he is authorized to contract for the collection of debts due the State, or any of its departments or institutions, on a contingent basis. See State Appropriations Act April 16, 1943, 43 St. at Large, p. 342. These are among many illustrations of statutory provisions, some in general terms and others limited to specific matters and specific departments of the State government, indicating the wide scope of the authority and duties of the Attorney General as the legal representative of the State and of its several administrative departments.

While in the decisions of this Court there is no adjudication specifically applicable to the facts of this case, reference may be made to the following cases as bearing upon the scope of the powers and duties of the Attorney General. *State v. Cooper,* 110 S. C., 256, 96 S. E., 398; *State v.*

*Southern R. Co. et al.,* 82 S. C., 12, 62 S. E., 1116; *State v. Penman and others,* 2 Desaus., 1, 2 S. C., 1.

In 5 Am. Jur., p. 240, it is set forth that the Attorney General of a state "may enter into compromises and settlements of suits in which the State is an interested party, which will be binding on the State, where there is doubt and an honest dispute as to the State's rights, and the compromise or settlement is a *bona fide* one, at least when he acts with the approval of the executive head of the department having charge of the matter involved in the suit."

An interesting discussion of the general subject of the power of the Attorney General, in relation to the compromise of an asserted liability for inheritance taxes, is contained in the case of *State ex rel. Wilson v. Young, Attorney General,* 44 Wyo., 6, 7 P. (2d), 216, 81 A. L. R., 114. An annotation to that case (81 A. L. R., 124 *et seq.*), collates the authorities on the subject.

The motion of the two members of the South Carolina Tax Commission is accordingly dismissed, the petition is dismissed, and the restraining order heretofore granted on the petition and motion is vacated.