41 So.2d 280

**STATE ex rel. CARMICHAEL, Attorney General, v. JONES.**

**3 Div. 527.**

Supreme Court of Alabama.

May 19, 1949.

Rehearing Denied June 30, 1949.

Hill, Hill, Whiting & Harris and John O. Harris, of Montgomery, amici curiae.

Hill, Hill, Stovall & Carter, of Montgomery, for respondent.

A. A. Carmichael, Atty. Gen., and Silas C. Garrett, III, Asst. Atty. Gen., for petitioner.

482

SIMPSON, Justice.

Petition for mandamus to require respondent Judge to enter a consent judgment in a cause pending in his court.

The essential question for decision is whether the attorney general of Alabama is authorized and empowered to settle a pending suit by the State filed by him in his official capacity for the collection of an unliquidated tax claim, by taking a consent judgment in the cause for less than the amount sued for and claimed to be due by the tax department.

The claim was made by the department of revenue and placed in his hands for suit, as the law requires, as license taxes due by the terms of § 597, Title 51, Code 1940. The total amount claimed in the suit was $2591.50 and the petition for mandamus, with the agreement of the respective counsel for the consent judgment attached thereto, shows that there was a bona fide dispute as to the law and the facts governing a determination of the amount due; that an agreement had been reached to settle the suit by taking a judgment for $1587.50; that it is to the best interest of the State that said suit be settled in this manner, but that the respondent judge, before whom the suit is pending, has refused to enter said judgment.

The director of the department of revenue appeared in court where the cause was pending and through his own specially designated counsel opposed the rendition of the judgment.

Three propositions are advanced for the respondent as grounds for denying the writ: (1) That the rendition of the judgment would be judicial or would involve a judicial discretion and, being so, mandamus will not lie to require it; (2) lack of authority of the attorney general to make disposition of the pending tax case without the approval or order of the department of revenue, because of the provisions of § 139, Title 51, Code; and (3) lack of power of the attorney general to settle such a state-held claim by reason of § 100 of the Constitution.

The questions are not so easily resolved as the parties, in their zeal, inveigh for their respective sides in the briefs and arguments. We think, however, that the conclusions here reached find rational support in both reason and authority. The propositions will be discussed in order.

(1)

 Remedy—Concededly mandamus will not be awarded to require a lower court to perform a judicial duty or one calling for the exercise of judicial discretion. We have said, "mandamus will lie for the purpose of setting judgment or discretion in motion, but not to direct the manner of its exercise." Woodward Iron Co. v. Vines, 217 Ala. 369, 116 So. 514, 515; Henry v. State ex rel. Welch, 200 Ala. 475, 76 So. 417.

 But the remedy of mandamus is available to require the performance of a ministerial act as distinguished from one judicial, and the act of entering a consent judgment in a matter lawfully agreed upon between the parties and within the authority of the court is ministerial. The sense in which the act is judicial is the examination of the record to determine the court's authority and where the necessary parties have lawfully agreed as regards subject matter within its jurisdiction, the courts generally will perform the ministerial act of entering the judgment on the agreement. There are a few exceptions but, here, no such situation exists as to bring it within the exceptions if the attorney general could

lawfully make the agreement for the consent judgment.

This statement of principle is supported by the authorities as carried in the text of 49 Corpus Juris Secundum, Judgments, § 176, pp. 312-313, where it is stated:

"An order for entry of a consent judgment is a judicial act in the sense that it requires the court to examine the record to determine its authority, but is ministerial in the sense that it is predicated on the agreement of the parties. * * *

"So, where the parties have lawfully agreed, the actual entry of judgment is a mere ministerial act, unless the case is one in which the defendant has the right to be heard as to the nature or terms of the judgment to be entered. * * *"

To the same effect is the following pertinent statement in 35 American Jurisprudence, p. 46, § 285:

"An inferior court may unquestionably be compelled by mandamus to proceed to judgment in a case properly before it, and where its duty in the matter is plain and unmixed with discretionary power, it may be compelled to enter a judgment or decree, as in a case where nothing remains to be done but the clerical work of entering it. So, the writ may issue to require the court to enter judgment * * * which has been agreed upon or stipulated to by the parties. * * *"

The court in the instant case did have jurisdiction of the subject matter and the parties, so if the consent agreement as to the disposition of the cause was lawful— that is, within the power and authority of the attorney general to make—it was the court's duty to give the agreement effect by entering the judgment thereon.

We proceed then to consider propositions (2) and (3), viz., whether § 139, Title 51, Code 1940, or § 100 of the Constitution proscribed such action.

(2)

§ 139, embraced in the statute creating the department of revenue provides:

"Whenever any matter is pending before any court affecting the revenue laws of the state, and in which the state is an interested party and the interest is very important,

the department of revenue may, with the approval of the governor and attorney general, employ special counsel to represent the interest of the state on the trial thereof; provided, that the attorney general certifies to the governor in writing that neither he nor any of his assistants are available for service, and *no case pending before a court affecting the revenue laws of the state shall be dismissed by counsel representing the state, whether specially employed counsel or otherwise, except by order of the department of revenue.*" (We emphasize.)

It is argued to sustain the refusal to enter the consent judgment that the underscored portion of the above-quoted section, forbidding counsel representing the state in matters affecting the revenue laws from dismissing pending cases, applies to the attorney general as well as the regular or special counsel of the revenue department. The contention must be rejected.

 In view of the broad powers vested in the attorney general both by common law and under various statutes, we cannot say with any degree of certainty that the quoted provision of § 139 was intended to apply to him. This provision is part of the statute making provision for the establishment of the department of revenue and must be read in connection with the preceding provisions authorizing the appointment of counsel to represent the department. Section 120 authorizes the appointment of legal counsel for the department of revenue by the commissioner, with the approval of the attorney general, who shall be commissioned as an assistant attorney general. Section 122 gives authority for the commissioner to appoint not more than three assistant counsel for the department of revenue, with the approval of the attorney general, who likewise must be commissioned as assistant attorneys general. Section 123 inhibits such counsel from appearing in court for the State of Alabama unless directed so to do by the commissioner of revenue and the attorney general. And then the proviso in § 139 as regards the dismissal of pending cases by "specially employed counsel or otherwise." It is our considered opinion, after a careful consideration of these and other related sections of the law establishing the department

484

of revenue, that the underscored provision of said § 139 does not and was not intended to apply to the attorney general, the term "otherwise" loosely carried in the statute to apply to all counsel for the department of revenue whether special or regular, general or assistants.

In coming to this conclusion we thus rationalize. The attorney general is a constitutional officer, the chief law officer of the state, and on him are conferred various authorities and duties in connection with instituting and prosecuting, in the name of the state, suits and other proceedings at law and in equity for the preservation and protection of the rights and interests of the state (Constitution, §§ 112, 137), and if § 139 were intended to so abridge his general authority over lawsuits instituted by him by subjecting his decisions in such matters to another executive head, not necessarily learned in the law, we think it should have said so by more specific language.

The following provisions in the Code imposing various duties and conferring various powers on the attorney general are persuasive to this view: Code 1940, Title 55, §§ 228, 229, 234, 235, 236, 240, 244. We take particular notice of § 244, which in effect provides that all litigation concerning the interest of the state or any department thereof shall be under the direction and control of the attorney general. Taking into consideration the scope of authority and duty imposed on him by these statutes, we do not think they were intended to mark the limits or bounds of his authority, but to indicate certain specific duties and confer certain definite authority in the instances mentioned. Indeed, we intimated as much in McDowell v. State, 243 Ala. 87, 89, 8 So.2d 569, 570, where it was observed:

"We can perceive of no good reason why the express statutory authority of the Attorney General to institute and prosecute suits should not carry with it the implied authority to do all things necessary and proper to their final conclusion. * * *"

The stronger current of opinion affirms that the attorney general's powers are as broad as the common law unless restricted or modified by statute. Of the authority generally of the attorney general to control litigation instituted by him in behalf of the state, it is said in 6 Corpus Juris 814, 815, § 22:

"In the absence of explicit legislative expression to the contrary, the attorney-general possesses entire dominion over every suit instituted by him in his official capacity whether there is a relator or not. As an incident of such control, the attorney-general has power to dismiss or to discontinue suits brought by him, either with or without a stipulation by the other party, and to make any disposition of such suits that he deems best for the interest of the state. * * *"

See also 7 C.J.S., Attorney General, § 8 d, p. 1230.

We also observe an interesting text to like effect in 5 American Jurisprudence 240, § 11:

"Ordinarily the attorney general, both under the common law and by statute, is empowered to make any disposition of the state's litigation which he deems for its best interest. His power effectively to control litigation involves the power to discontinue if and when, in his opinion, this should be done. Generally, therefore, the attorney general has authority to direct the dismissal of proceedings instituted in behalf of the state. * * *"

Our own decisions, as well as the better reasoned authority elsewhere, support these general texts. For reference see McDowell v. State, 243 Ala. 87(6), 8 So.2d 569; Try-Me Bottling Co. v. State, 235 Ala. 207, 178 So. 231; State ex rel. Chilton County v. Butler, 225 191, 142 So. 531; Montgomery v. Sparks, 225 Ala. 343, 142 So. 769; People of State of New York v. State of New Jersey, 256 U.S. 296, 41 S.Ct. 492, 65 L.Ed. 937; In re Confiscation Cases, 7 Wall. 454, 74 U.S. 454, 19 L.Ed. 196; State of South Carolina v. Southern R. Co., 82 S.C. 12, 62 S.E. 1116; State of Nebraska v. Fremont, Elkhorn and Mo. Valley R. Co., 22 Neb. 313, 35 N.W. 118; People ex rel. Stead, Attorney General, v. Spring Lake Drainage & Levee District, 253 Ill. 479, 97 N.E. 1042; Cooley v. South Carolina Tax Comm., 204 S.C. 10,

26, 28 S.E.2d 445; see 81 A.L.R. 124 et seq.; State v. Finch, 128 Kan. 665, 280 P. 910, 66 A.L.R. 1369; People v. Finch, Pruyon & Co., 207 App.Div. 76, 202 N.Y.S. 582, affirmed 238 N.Y. 584, 144 N.E. 902; State ex rel. Smith v. Leonard, 192 Ark. 834, 95 S.W.2d 86(3).

So pretermitting any question of bad faith, which is not here raised, it is our conclusion that the attorney general, as the chief law officer of the state, was fully empowered to make any bona fide disposition of the cause as in his judgment might be deemed to be to the best interest of the state, unless inhibited by organic law.

(3)

This brings under consideration the final contention as a basis for the respondent's refusal to enter the judgment, viz., that § 100 of the Constitution proscribed such action.

Section 100, as pertinent, provides that "no obligation or liability of any person, association, or corporation held or owned by this state * * * shall * * * be extinguished except by payment thereof; * * * provided, that this section shall not prevent the legislature from providing by general law for the compromise of doubtful claims."

■ It is settled law in this jurisdiction that when the amount of an obligation has been legally fixed and determined it cannot by reason of such constitutional restriction be released unless its collection is doubtful and then only by the Board of Compromise, under § 12, Title 55, Code. So in applying § 100 of the Constitution to any particular situation, it is necessary to determine first whether the amount of the claim has been fixed and determined and that involves the question of who has the right to fix and determine it. When the department of revenue is charged with the duty of making a final tax assessment and in so doing, the taxpayer has an opportunity to be heard in such a way as to accord due process, such final assessment by the department fixes the claim and is conclusive of the amount of it unless that final assessment is attacked and overturned in some way authorized by law for its review. Hence the holding that such a final assessment cannot be compromised or settled for an amount less than that as finally fixed, by reason of the inhibition of § 100, unless the claim is doubtful of collection and then only by authority of the Board of Compromise. Opinion of the Justices, 251 Ala. 96, 36 So.2d 480.

■ But that is not this case. Here no final assessment fixing an amount due has been made and certain it is the department of revenue is without authority to make a final judicial determination of such fact. That was the purpose of the suit, and we do not think that § 100 forbidding the compromise or release of a state-owned obligation or liability undertakes to inhibit the good-faith settlement of a pending suit on an unliquidated state claim by the state's chief law officer, in whose hands it has been committed for collection after a bona fide determination by him of the value thereof on a consideration of the known facts and the law governing.

It should not be the duty of the attorney general, nor is it the duty of any lawyer in the prosecution of a claim in court, to take a position contrary to his judgment as to what it ought to be. If the attorney general, in the prosecution of such case, has honestly concluded on the evidence before him as to the value of or amount due by the claim on which he has instituted suit, we do not think that § 100 stands in the way of an agreement for a judgment in such an amount.

Well-reason decisions by the Supreme Court of Mississippi in the cases of Robertson, State Revenue Agent, v. H. Weston Lumber Co., 124 Miss. 606, 608, 87 So. 120; Eastman, Gardiner & Co. v. Adams, 101 Miss. 460, 58 So. 221; and Adams, State Revenue Agent, v. Fragiacomo, 71 Miss. 417, 425, 15 So. 798, construing § 100 of the Constitution of 1890 of that state, of which our § 100 of the 1901 Constitution seems to be a counterpart, fortify and fully sustain the conclusion here attained. The Eastman case, in speaking of a contended bar to a settlement of an unliquidated state-held claim because of § 100 of the Mississippi Constitution, said:

" * * * The claim of the county or state against appellant was unliquidated,

and, in order that a settlement could be had, authority to ascertain and fix the amount thereof must of necessity be lodged somewhere; and since the board of supervisors had full jurisdiction and control of the matter, it follows that this power is lodged with it. Otherwise, no settlement of such a claim could ever be made, except at the end of a lawsuit, in which the amount of damages could not be agreed upon, but must be ascertained by the judgment of the court. It cannot be, therefore, that this character of obligation or liability is embraced within the meaning of these words as used in section 100 of our Constitution." 58 So. 221.

The Fragiacomo case, supra, imported a like opinion as to the interpretation to be accorded that section of the Constitution, and the Robertson case, supra, categorically held that the provision did not apply to unliquidated claims. It was stated in this latter case:

"This section does not apply to the case before us. The section does not prevent an agreement by judgment for the ascertainment of an amount which is uncertain in its nature. Under this section of the Constitution * * * it is competent for the state or the officer having power to represent it, acting in good faith, to consent to a judgment liquidating the amount due. The section was not intended to prevent the entry of a judgment for a less amount than the amount sued for where the claim was unliquidated and not capable of ascertainment by calculation, or some equally certain manner." 87 So. 124.

Our conclusion, therefore, is that in the absence of a showing of bad faith, or such arbitrary action as to be tantamount to bad faith, on the part of the attorney general, the interdiction of § 100 would not stand in the way of taking the said consent judgment.

The opposing contention has been supported by able argument, but we are persuaded that the action of the learned trial judge was laid in error.

Writ granted.

Foster, Lawson, and Stakely, JJ., concur, but Lawson, J., dissents as to the interpretation accorded § 139, Title 51, of the Code,

being of the opinion that the statute intended to include the Attorney General among the "counsel" referred to therein, but that the section should be construed to apply only to the *dismissal* of a pending cause and does not apply to the status here prevailing, where the case was settled by taking a consent judgment; otherwise he concurs in the opinion.

BROWN and LIVINGSTON, JJ., dissent.

## On Rehearing.

PER CURIAM.

Because of the earnestness of able counsel in their contention that the rendition of the consent judgment partakes of that judicial character which forbade the issuance of the writ to coerce performance by the lower court, we think this brief response to be in order.

Whatever may be the holdings elsewhere, this court has long been committed to the principle that the act of rendering a consent judgment, lawfully agreed upon between parties, sui juris, and within the jurisdiction of the court, is ministerial and not judicial as these terms are considered in that connection. Mudd v. Lanier, 247 Ala. 363, 24 So.2d 550(4); Cowley v. Farrow, 193 Ala. 381, 383, 69 So. 114; Carr v. Illinois Central R. Co., 180 Ala. 159, 166, 60 So. 277, 43 L.R.A., N.S., 634.

The fact that the public interest is involved in no way detracts from the soundness of the principle if, as was pointed out in the original opinion, the consent agreement was lawful, that is, one made in good faith and within the power of the attorney general to enter into.

With due respect to the able argument advanced on rehearing, we think the principles originally announced to be sound and well supported by competent authority and therefore adhere thereto.

Opinion extended and application for rehearing overruled.

FOSTER, LAWSON, and STAKELY, JJ., concur.

BROWN and LIVINGSTON, JJ., dissent.